# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-3543

_____

Jan McRaven, guardian of the person   *
and estate of Steven McFarland, an   *
incapacitated person,   *

  *

    Plaintiff-Appellee,   *

  *

   v.   *

  *

Larry Sanders, individually and as   *
Sheriff of Garland County, Arkansas;   *
Captain Mel Steed, individually and as   *
jail administrator for adult detention   *
for Garland County, Arkansas,   *

  *   Appeal from the United States
    Defendants,   *   District Court for the Western
  *   District of Arkansas.

Lt. McMurrian, individually and as a   *
supervisory officer for Garland County,   *
Arkansas; Sgt. Radley, individually and   *
as 7AM - 3PM shift supervisor for the   *
Garland County Detention Center; Sgt.   *
Dan Ansley, individually and as 3PM -   *
11PM shift supervisor for the Garland   *
County Detention Center,   *

  *

    Defendants-Appellants,   *

  *

Cpl. Forrest L. Marks, individually and   *
as an officer of the Garland County   *
Sheriff's Department,   *

  *

    Defendant,   *

                                                    *
Deputy Dodge, individually and as an                *
officer of the Garland County Sheriff's             *
Department; Deputy J.D. Henry,                      *
individually and as officer of the                  *
Garland County Sheriff's Department;                *
Nurse Tommy L. Harmon, LPN,                         *
individually and as nurse for the Garland           *
County Adult Detention Center,                      *
                                                    *
                Defendants-Appellants,              *
                                                    *
Officer Nick Dodd, Certified D.R.E.,                *
individually and as a member of the Hot             *
Springs, Arkansas Police Department,                *
                                                    *
                Defendant.                           *
                                        _____

                        Submitted: June 10, 2009
                          Filed: August 20, 2009
                                        _____

Before BYE, HANSEN, and BENTON, Circuit Judges.
                                        _____

BENTON, Circuit Judge.

        Jan McRaven sued Garland County officials under 42 U.S.C. § 1983 and the
Arkansas Civil Rights Act, Ark. Code § 16-123-105, on behalf of Steven Ross
McFarland, an incapacitated person. The district court[1] denied qualified immunity to
six defendants. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

_____

        [1]The Honorable Robert T. Dawson, United States District Judge for the Western
District of Arkansas.

## I.

Around 8:45 a.m. on February 13, 2007, Arkansas State Police arrested McFarland for driving while intoxicated from the influence of drugs, among other charges. *See* **Ark. Code § 5-65-103**. The arresting officer's report states, "Mr. McFarland appeared to be intoxicated," "appeared to be sleepy, and at times he fell asleep."

Police took McFarland to the Garland County Adult Detention Center, where Deputy John T. Dodge, a detention facility officer, booked him in the presence of Deputy John D. Henry. A drug recognition expert took a urine sample, which tested positive for marijuana, benzodiazepines, and opiates. McFarland told the expert he had taken Seroquel, Hydrocodone, Depakote, and Ambien. McFarland possessed a prescription, issued the previous day, for 90 tablets of Chlorzoxazone, a muscle-relaxer. Twenty-one pills were missing from the bottle.

The drug influence evaluation was completed at 11:47 a.m. It states that McFarland's coordination is "poor," his speech is "slurred," his face is "flushed," and his eyelids are "droopy." "Arrestee stated that he took an unknown amount of" the pharmaceutical drugs he had mentioned before. McFarland's pulse, blood pressure, and temperature were "down." A blood alcohol test showed McFarland had not been drinking.

Lieutenant Judy Ann McMurrian was the supervising detention facility officer on February 13. Notified of the missing pills and of McFarland's symptoms, she spoke with Sergeant Ronald Radley, another detention facility officer, about transporting McFarland to a hospital. Radley suggested consulting Tommy L. Harmon, a practical nurse at the facility, before taking any action. McMurrian agreed.

McFarland entered a holding cell at about 12:30 p.m. A videotape shows him moving only once in the next five hours. Nurse Harmon examined McFarland in the cell, concluding he did not require hospitalization.[2] Harmon's affidavit states that McFarland snored loudly, "as if he was sleeping off alcohol." Deputy Henry — who was with Dodge during the booking — was also present during the examination in the cell, but did not inform Harmon of McFarland's ingestion of drugs.

Officers placed another detainee in McFarland's cell at 5 p.m. A half-hour later, the detainee noticed that McFarland was not breathing; he notified officers. Sergeant Dan J. Ansley, trained in CPR, entered the cell at 5:35 p.m. The videotape shows Ansley standing over McFarland shaking him; Ansley claims he checked for and observed a weak pulse. No officer attempted to perform CPR on McFarland.

Paramedics arrived at 5:42 p.m., and transported McFarland to a hospital. He sustained severe brain injuries, stemming from airway blockage.

McRaven sued Garland County officials, on behalf of McFarland, alleging deliberate indifference to McFarland's medical need. The district court granted qualified immunity to several defendants, concluding they lacked subjective knowledge of McFarland's condition and, therefore, were not deliberately indifferent. The district court denied qualified immunity to Lieutenant McMurrian, Sergeant Radley, Deputy Dodge, Deputy Henry, Nurse Harmon, and Sergeant Ansley, concluding that disputed material facts exist about their subjective knowledge of McFarland's medical need.

---

[2]The parties dispute what actions Harmon took. Reviewing a qualified immunity motion, this court takes the facts as asserted by the party claiming injury. *Serna v. Goodno*, 567 F.3d 944, 951-52 (8th Cir. 2009), *citing Saucier v. Katz*, 533 U.S. 194, 201 (2001), *abrogated in part on other grounds*, *Pearson v. Callahan*, 129 S.Ct. 808, 818 (2009).

II.

A.

"Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . ." **42 U.S.C. § 1983**. "[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quotations and citation omitted). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104-05 (footnotes omitted). An official who is deliberately indifferent to a prisoner's medical needs is subject to suit under § 1983. *Id.* at 105.

This court analyzes a pretrial detainee's § 1983 claim under the Due Process Clause of the Fourteenth Amendment, not under the Eighth Amendment. *Kahle v. Leonard*, 477 F.3d 544, 550 (8th Cir.2007), *cert. denied*, 128 S.Ct. 201 (2007). "This makes little difference as a practical matter, though: Pretrial detainees are entitled to the same protection under the Fourteenth Amendment as imprisoned convicts receive under the Eighth Amendment." *Id.*

"Deliberate indifference has both an objective and a subjective component." *Vaughn v. Gray*, 557 F.3d 904, 908 (8th Cir. 2009). "The objective component requires a plaintiff to demonstrate an objectively serious medical need." *Id.* "The subjective component requires a plaintiff to show that the defendant actually knew of, but deliberately disregarded, such need." *Id.*

-5-

"In a § 1983 action, state actors may be entitled to qualified immunity." ***Riehm v. Engelking***, 538 F.3d 952, 962 (8th Cir. 2008). "Qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" ***Id.***, *quoting **Malley v. Briggs***, 475 U.S. 335, 341 (1986). "To overcome the defense of qualified immunity, a plaintiff must show: (1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation." ***Howard v. Kansas City Police Dep't.***, 570 F.3d 984, 988 (8th Cir. 2009). This court exercises its "sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." ***Id.***, *quoting **Pearson***, 129 S.Ct. at 818.

## B.

The district court denied defendant-appellants qualified immunity. A detainee's right to medical treatment is clearly established. ***Estelle***, 429 U.S. at 104. The court concluded that McFarland objectively demonstrated medical need, and that the subjective knowledge of each defendant-appellant was a disputed material fact. This court reviews de novo denials of qualified immunity. ***Bonner v. Outlaw***, 552 F.3d 673, 676 (8th Cir. 2009).

## 1. Lieutenant McMurrian

"Intentional delay in providing medical treatment shows deliberate disregard if a reasonable person would know that the inmate requires medical attention or the actions of the officers are so dangerous that a knowledge of the risk may be presumed." ***Gordon ex rel. Gordon v. Frank***, 454 F.3d 858, 862 (8th Cir. 2006). In *Gordon*, this court affirmed the denial of qualified immunity when an officer was aware of the inmate's medical issues, knew the inmate had complained of breathing

trouble and chest pain, but waited for other officers to ask him to initiate medical treatment.  *Id.* at 862-63.

McMurrian initially wanted McFarland hospitalized, but changed her mind after receiving Nurse Harmon's recommendation that hospitalization was unnecessary. McRaven asserts that Harmon, a practical nurse, is unqualified as a matter of law to determine whether or not McFarland should have been hospitalized, since Harmon was not supervised by a more senior medical professional.[3]  This court need not decide that issue.  Instead, the question is whether McMurrian and the other defendant-officers reasonably relied on Harmon's medical opinion, whether or not Harmon should have provided a medical opinion without supervision.

A prison official may rely on a medical professional's opinion if such reliance is reasonable.  *Meloy v. Bachmeier*, 302 F.3d 845, 849 (8th Cir. 2002) ("The law does not clearly require an administrator with less medical training to second-guess or disregard a treating physician's treatment decision."); *see also* *Johnson v. Doughty*, 433 F.3d 1001, 1010 (7th Cir. 2006) ("Except in the unusual case where it would be evident to a layperson that a prisoner is receiving inadequate or inappropriate treatment, prison officials may reasonably rely on the judgment of medical professionals.") (citation omitted).

---

[3]Arkansas law defines the "practice of practical nursing" as:

> the performance for compensation of acts involving the care of the ill, injured, or infirm or the delegation of certain nursing practices to other personnel as set forth in regulations established by the board under the direction of a registered professional nurse, an advanced practice nurse, a licensed physician, or a licensed dentist, which acts do not require the substantial specialized skill, judgment, and knowledge required in professional nursing.

**Ark. Code § 17-87-102(5)**.

Here, McMurrian could not reasonably rely on Harmon's medical opinion, for three reasons. First, McMurrian was aware of the cocktail of potent drugs McFarland had consumed, and that circumstances strongly suggested McFarland did not consume the drugs in prescribed dosages. *See, e.g.*, **Spann v. Roper**, 453 F.3d 1007, 1009 (8th Cir. 2006) ("even a lay person would know that taking a large dose of mental-health medication prescribed for another person is potentially dangerous"). Second, McMurrian was aware that McFarland exhibited symptoms of extreme intoxication. The drug influence evaluation describes a clearly impaired person, which should have alerted McMurrian to McFarland's medical need. Third, McMurrian knew, or reasonably should have known, that Harmon based his medical assessment on the faulty assumption that McFarland was under the influence of alcohol, not drugs. Given McMurrian's knowledge of the drugs McFarland consumed and his physical state — facts that should have triggered special concern — it was unreasonable to rely on a medical assessment grounded on incorrect information. In combination, these three facts preclude qualified immunity.

This situation differs from the case relied on by defendants, *Grayson v. Ross*, 454 F.3d 802 (8th Cir. 2006). There, the intake officer was aware that the detainee "was likely under the influence of methamphetamine," but "did not know the amount of the methamphetamine taken or the time it was taken." *Id.* at 810. "Nor could he readily determine the degree of" the detainee's intoxication. *Id.* Here, by contrast, the intake officers knew the cocktail of drugs taken by McFarland, and the drug intoxication evaluation showed a severely intoxicated detainee.

Like the *Gordon* officer, McMurrian was aware of McFarland's medical issues, knew he appeared medically distressed, and declined have him hospitalized. *See* **Gordon**, 454 F.3d at 862-63; *see also* **Vaughn**, 557 F.3d at 909 n.5 (an officer's knowledge of a prisoner's serious medical need "may be *inferred* when a risk is so obvious that a reasonable person would recognize it"), *citing* **Farmer v. Brennan**, 511

U.S. 825, 842 (1994).  The district court did not err by denying McMurrian qualified immunity.

## 2. Sergeant Radley

McMurrian told Radley that McFarland should be hospitalized.  Radley disagreed, instead seeking permission from McMurrian for Nurse Harmon to evaluate McFarland.  Radley was aware of McFarland's ingestion of drugs, but did not inform Harmon of this fact.  Later, Radley observed, via the video monitor, McFarland sleeping in his cell for several hours without moving.

To be liable for deliberate indifference, an "official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.  Radley knew of the large quantity of drugs consumed by McFarland and his symptoms of intoxication. Radley could not reasonably rely on Nurse Harmon's medical opinion without informing Harmon of McFarland's ingestion of drugs.  *Meloy*, 302 F.3d at 849. Disputed issues of material fact exist over Radley's subjective knowledge of McFarland's medical need.  The district court did not err by denying Radley qualified immunity.  *Gordon*, 454 F.3d at 862-63.

## 3. Deputy Dodge

"An objectively serious medical need is one that either has been diagnosed by a physician as requiring treatment, or is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Jones v. Minnesota Dept. of Corr.*, 512 F.3d 478, 481 (8th Cir. 2008) (quotations and citation omitted). Dodge's affidavit states: "At no time did I suspect that Mr. McFarland needed any type of medical care." According to the record, Dodge knew of the large quantity of drugs consumed by McFarland and his symptoms of intoxication, and could not reasonably rely on

Harmon's evaluation. He knew "of and disregard[ed] an excessive risk to inmate health or safety." **Farmer**, 511 U.S. at 837. Dodge's subjective knowledge of McFarland's medical need is a disputed issue of material fact. The district court did not err by denying him qualified immunity.

## 4. Deputy Henry

Henry was present during the booking, when McFarland's drug ingestion was discussed, and during Harmon's examination of McFarland in the cell. Henry could have, but did not, inform Harmon of the drugs consumed by McFarland during Harmon's medical examination. Before agreeing with Radley not to hospitalize McFarland, McMurrian discussed the nurse's evaluation with Henry. Under these circumstances, Henry could not reasonably rely on Harmon's evaluation. Disputed issues of material fact exist over Henry's subjective knowledge of McFarland's medical need, and the district court did not err by denying him qualified immunity. **Farmer**, 511 U.S. at 837; **Gordon**, 454 F.3d at 862-63.

## 5. Nurse Harmon

"Whether a prison's medical staff deliberately disregarded the needs of an inmate is a factually-intensive inquiry." **Meuir v. Greene County Jail Employees**, 487 F.3d 1115, 1118 (8th Cir. 2007). "The plaintiff-inmate must clear a substantial evidentiary threshold to show that the prison's medical staff deliberately disregarded the inmate's needs by administering an inadequate treatment." **Id.**

Negligent misdiagnosis does not create a cognizable claim under § 1983.

[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a

-10-

prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 106. *See also **Popoalii v. Corr. Med. Servs.***, 512 F.3d 488, 499 (8th Cir. 2008) ("Medical malpractice alone . . . is not actionable under the Eighth Amendment."). "'Deliberate indifference' entails a level of culpability equal to the criminal law definition of recklessness, that is, a prison official 'must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" ***Bender v. Regier***, 385 F.3d 1133, 1137 (8th Cir. 2004), *quoting **Farmer***, 511 U.S. at 837.

Harmon cannot be liable for negligently mistaking drug intoxication as alcohol intoxication. *Estelle*, 429 U.S. at 106; *see also **Sealock v. Colorado***, 218 F.3d 1205, 1211 (10th Cir. 2000) (holding that a prison nurse is not liable for deliberate indifference when, "[a]t worst, she misdiagnosed appellant and failed to pass on information . . . about appellant's chest pain.").

"Although medical negligence does not violate the eighth amendment . . . medical treatment may so deviate from the applicable standard of care as to evidence a physician's deliberate indifference." ***Moore v. Duffy***, 255 F.3d 543, 545 (8th Cir. 2001). Harmon's affidavit states that he took McFarland's "blood pressure and pulse on several occasions," and that "[n]one of these readings indicated a medical need to me." The videotape of the cell, which recorded McFarland sleeping for five hours, does not show Harmon checking McFarland's blood pressure or pulse. This creates a disputed material fact about the care Harmon provided.

More importantly, having (incorrectly) evaluated McFarland as being intoxicated from alcohol, Harmon did not consult the blood alcohol test results — available at the time — to determine whether McFarland required hospitalization for alcohol poisoning. Had he done so, Harmon would have realized that McFarland was

not under the influence of alcohol, signaling that something else was wrong. *Cf. Popoalii*, 512 F.3d at 500 (affirming prison medical staff's qualified immunity when inmate demonstrated "none of the normal signs or risk factors" of a serious medical condition). This fact raises an inference of recklessness, if not incompetence, precluding qualified immunity. *See, e.g.*, ***Dominguez v. Corr. Med. Servs.***, 555 F.3d 543, 550 (6th Cir. 2009) (prison nurse denied qualified immunity when she "was aware of risks associated with excessive heat, dehydration, and heat stroke," but "ignored and/or acted with deliberate indifference when faced with those risks").

## 6. Sergeant Ansley

Ansley entered the cell after receiving notice that McFarland was not breathing. The videotape shows him standing over McFarland and shaking him for seven minutes before paramedics arrive. Despite being trained in CPR, Ansley made no attempt to resuscitate McFarland.[4] (Lieutenant McMurrian was also present at this time, but was not trained in CPR.)

An officer trained in CPR, who fails to perform it on a prisoner manifestly in need of such assistance, is liable under § 1983 for deliberate indifference. ***Tlamka v. Serrell***, 244 F.3d 628, 633 (8th Cir. 2001). In *Tlamka*, three CPR-trained officers declined to resuscitate an incapacitated prisoner, despite knowing the prisoner had responded favorably to CPR performed by a fellow inmate. *Id.* "The record contains no explanation for the purported delay in CPR, and thus, under the facts as presented on summary judgment, we cannot say that as a matter of law the officers were not deliberately indifferent in responding to Tlamka's heart attack." *Id.* at 633-34.

---

[4]Ansley claims that he did not perform CPR because he detected a faint pulse. Reviewing a qualified immunity motion, this court takes the facts as asserted by the party claiming injury. *Serna*, 567 F.3d at 951-52.

Here, Ansley was aware of McFarland's medical need and was capable of providing assistance. He failed to do so. The district court did not err by denying him qualified immunity.

## III.

Defendants also seek dismissal of McRaven's claim under the Arkansas Civil Rights Act, Ark. Code § 16-123-105. "[T]he district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." **28 U.S.C. § 1367(a)**. This court reviews an exercise of supplemental jurisdiction for abuse of discretion. *Moots v. Lombardi*, 453 F.3d 1020, 1024 (8th Cir. 2006). Here, the federal and state claims "derive from a common nucleus of operative fact," and the district court did not abuse its discretion by exercising supplemental jurisdiction. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).

## IV.

The judgment of the district court is affirmed.

_____