FILED
United States Court of Appeals
Tenth Circuit

October 5, 2009

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

CHARLES LEON WEATHERFORD,
by and through Carla Thompson as
administratrix of the Estate of Charles
Leon Weatherford,

        Plaintiff-Appellee,

v.

DEBBIE TAYLOR, individually,

        Defendant-Appellant,

    and

MUSKOGEE COUNTY BOARD OF
COUNTY COMMISSIONERS;
CHARLES PEARSON, as Sheriff of
Muskogee County,

        Defendants.

No. 09-7018
(D.C. No. 6:08-CV-00088-RAW)
(E.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **LUCERO**, **BALDOCK**, and **MURPHY**, Circuit Judges.

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Pretrial-detainee Charles Leon Weatherford suffered a fatal heart attack while incarcerated in the Muskogee County Detention Center (MCDC). Defendant-Appellant Debbie Taylor was the supervisor on duty at the time. Weatherford's estate filed a 42 U.S.C. § 1983 action against Taylor and other defendants.

In this interlocutory appeal from an order denying summary judgment, we must decide whether the district court erred in ruling that Taylor is not entitled to qualified immunity. We affirm.

## I. BACKGROUND[1]

Shortly after starting her shift at midnight on June 29, 2007, Taylor received a phone call from an MCDC medical employee, Kim Farmer, informing her that Weatherford had been complaining of chest pain. Farmer indicated, however, that Weatherford "would be fine until" morning, because the pain was

---

[1]When reviewing the denial of a summary-judgment motion raising qualified immunity, we construe the record in the light most favorable to the plaintiff, the nonmoving party. *York v. City of Las Cruces*, 523 F.3d 1205, 1210 (10th Cir. 2008). In doing so, we focus on the "facts explicitly found by the district court, combined with those [facts] that it likely assumed" in ruling that qualified immunity does not apply. *Buck v. City of Albuquerque*, 549 F.3d 1269, 1276 (10th Cir. 2008). "When the factual and legal inquiries blur because the district court fails to make its factual assumptions explicit, we must undertake a cumbersome review of the record to ferret out facts that the district court likely assumed." *Fogarty v. Gallegos*, 523 F.3d 1147, 1154 (10th Cir. 2008) (quotation omitted).

"on the wrong side of [his] chest" to indicate a heart attack. Aplt. App., Vol. 1 at 85. Taylor sent a "runner" to check on Weatherford. *Id.*

Around 1:30 a.m., tower-operator Delbert Josey notified Taylor that Weatherford was pale, holding his chest, and that other inmates were "saying he's having a heart attack." *Id.*, Vol. 2 at 264. In response, Taylor had Weatherford brought to the observation cell a few feet from the window by her desk in the booking area. Taylor peered at Weatherford through the window at fifteen-minute intervals "[j]ust to make sure he[ ] [was] still alive." *Id.*, Vol. 1 at 79. She made no attempt to speak with him, even though inmates in the observation cell could be heard and spoken to from Taylor's desk.

Raymond Bighead testified that, while waiting to be booked, he was handcuffed to a bench near the observation cell the entire time that Weatherford was inside. According to Bighead, Weatherford and the other inmate in the cell, Brian Voss, repeatedly and loudly complained about the severity of Weatherford's chest pain and the need for medical assistance. Additionally, Bighead heard inmates "buzz[ing]" for medical help on Weatherford's behalf. *Id.*, Vol. 2 at 165.

Jailer Sean O'Rourke testified that Weatherford was loudly complaining of being held in the observation cell and that he asked to "see medical." *Id.*, Vol. 2 at 311. O'Rourke then spoke with Taylor about Weatherford. The specifics of their discussion are not in the record. Another jailer could hear Weatherford "complaining [indecipherable] about his chest hurting." *Id.*, Vol. 2 at 506. At no

point did Taylor attempt to contact the jail's medical staff or seek outside medical care for Weatherford.

Shortly after 4:00 a.m., Taylor returned from a break to find that Weatherford had collapsed. She called paramedics and performed CPR. Weatherford was taken to a hospital and pronounced dead at 4:53 a.m. of a heart attack.

Weatherford's estate sued the Muskogee County Sheriff and Board of County Commissioners, as well as various MCDC employees, including Taylor. Taylor moved for summary judgment, asserting qualified immunity. The district court denied the motion, finding a genuine issue of fact as to whether Taylor was deliberately indifferent to Weatherford's serious medical needs.

Taylor appeals.

## II. DISCUSSION

### A. Summary Judgment and Qualified Immunity Standards

We review de novo the denial of a summary judgment motion raising qualified immunity.[2] *Poolaw v. Marcantel*, 565 F.3d 721, 728 (10th Cir. 2009).

---

[2]The denial of a summary judgment motion is ordinarily not appealable. *Dixon v. Kirkpatrick*, 553 F.3d 1294, 1301 (10th Cir. 2009). But "[w]hen a party has been denied qualified immunity, that denial can be appealed prior to a final judgment . . . to the extent that the appeal is based on an issue of law." *Green v. Post*, 574 F.3d 1294, 1298 (10th Cir. 2009). "Our jurisdiction also extends to situations where a defendant claims on appeal that accepting the plaintiff's version of the facts as true, he is still entitled to qualified immunity." *York*, 523 F.3d at 1209. Thus, while "we lack jurisdiction to review the district court's rulings on the
(continued...)

When a defendant moves for summary judgment on the basis of qualified immunity, the plaintiff must carry a two-part burden for her claims to survive. The plaintiff must demonstrate on the facts alleged[3] (1) that the defendant violated her constitutional or statutory rights, and (2) that the right was clearly established at the time of the alleged unlawful activity. *Pearson v. Callahan*, 129 S. Ct. 808, 815-16 (2009). We may affirm a district court's ruling that immunity is unavailable only if both parts of this burden are satisfied. *Swanson v. Town of Mountain View*, 577 F.3d 1196, 1999 (10th Cir. 2009).

---

[2](...continued)
sufficiency of the evidence, we nevertheless may determine whether a given set of facts violates a clearly established constitutional right." *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009) (citation omitted).

[3]We are not required to credit a version of events accepted by the district court if that version "is so utterly discredited by the record that no reasonable jury could have believed [it]." *Scott v. Harris*, 550 U.S. 372, 380 (2007). For instance, in this case, the district court found it significant that Taylor relied "on the word of a medical employee [Farmer] who never examined [Weatherford]" to conclude that Weatherford was not having a heart attack. Aplt. App., Vol. 2 at 528. But there is nothing in the record suggesting that Taylor knew Weatherford had not been examined. Additionally, the district court found that when Weatherford was inside the observation cell, Taylor "told the inmates [who were complaining about Weatherford's condition] they were not qualified to know whether [Weatherford] was having a heart attack." Aplt. App., Vol. 2 at 528. But the record indicates that the statement was made by a different jail employee. *See id.* at 167. While there is some evidence that Taylor may have made a similar remark long before placing Weatherford in the observation cell, *see id.* at 161, that evidence appears disputed and was not utilized explicitly or implicitly by the district court. Consequently, that evidence is not part of "the universe of facts upon which we base our legal review." *Buck*, 549 F.3d at 1276 (quotation omitted).

## B. Deliberate Indifference

A jail official's "deliberate indifference to [the] serious medical needs of [a] prisoner[ ] constitutes the unnecessary and wanton infliction of pain, proscribed by the Eighth Amendment." *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006) (quotations omitted). "Under the Fourteenth Amendment's due process clause, pretrial detainees, like [Weatherford], are entitled to the same degree of protection regarding medical attention as that afforded convicted inmates under the Eighth Amendment." *Barrie v. Grand County*, 119 F.3d 862, 867 (10th Cir. 1997) (quotation omitted). "The test for deliberate indifference is both objective and subjective." *Callahan*, 471 F.3d at 1159.

The objective component is met if the harm suffered rises to a level sufficiently serious to be cognizable under the Eighth Amendment's Cruel and Unusual Punishment Clause. *Id.* The harms suffered in the instant case, severe chest pain and a fatal heart attack, satisfy the objective component. *See Mata v. Saiz*, 427 F.3d 745, 754 (10th Cir. 2005).

"To prevail on the subjective component, the prisoner must show that the defendant[ ] knew [that the prisoner] faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Callahan*, 471 F.3d at 1159 (quotation omitted). The pertinent question is whether the prisoner's symptoms were such that the defendant "knew the risk to the prisoner and chose (recklessly) to disregard it[.]" *Mata*, 427 F.3d at 753. We

may conclude that a jail official subjectively knew of the substantial risk of harm by circumstantial evidence or from the very fact that the risk was obvious. *Id.* at 752. Finally, the subjective component requires that the defendant must have disregarded the risk of harm claimed by the prisoner. *Id.*

The record, construed in the light most favorable to Weatherford's estate, demonstrates that Taylor learned soon after starting her shift that Weatherford was complaining of chest pain. It may have been reasonable for her to initially discount the severity of Weatherford's medical condition, given Farmer's assertions that Weatherford was hurting on the wrong side of his chest for a heart attack and that he would be fine until morning. *See McRaven v. Sanders*, 577 F.3d 974, 981 (8th Cir. 2009) (observing that a "prison official may rely on a medical professional's opinion if such reliance is reasonable"). But it quickly became obvious that Weatherford needed immediate medical attention. Specifically, at 1:30 a.m., Taylor was notified that Weatherford was pale and was clutching his chest, and that inmates were saying he was having a heart attack. Although moving Weatherford to the observation cell was a step in the right direction, Taylor made no attempt to communicate with him once he was there. Rather, she only looked at him periodically through her window, and then, only to see if he "was still alive." Aplt. App., Vol. 1 at 79. Taylor failed to take any further steps, despite (1) Weatherford's and Voss's loud complaints about Weatherford's severe chest pain and need for medical assistance, which would

have been audible at Taylor's desk; (2) Jailer O'Rourke's inquiry about Weatherford's presence in the observation cell after Weatherford loudly complained and asked to "see medical"; and (3) other inmates' attempts to get medical help for Weatherford once he was in the observation cell. Significantly, Taylor did not attempt to speak with Farmer again or otherwise seek medical assistance for Weatherford, even though Taylor knew that a person with chest pain could be suffering a medical emergency, including a heart attack. *See id.*, Vol. 2 at 359, 396.

Taylor argues, however, that the district court found that she did not actually believe that Weatherford was having a heart attack. This argument is unpersuasive for two reasons. First, the district court made no such finding. Instead, it simply noted that Taylor "claim[ed]" to have not believed a heart attack was in progress. *Id.*, Vol. 2 at 528. Second, deliberate indifference does not require a corrections official to "believ[e] that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Mata*, 427 F.3d at 752 (quotation and emphasis omitted).

Accepting the Estate's version of the facts as true, we conclude Taylor was aware of a substantial risk of harm to Weatherford and that she opted, at least recklessly, to disregard that risk, taking no action on Weatherford's behalf for several hours, and then, only after he collapsed.

Having concluded that Weatherford's estate has shown a constitutional violation, we now turn to the second prong of the qualified-immunity analysis. "In order to show that a principle is clearly established in the pertinent sense, a plaintiff ordinarily must identify cases of controlling authority at the time of the incident or a consensus of cases of persuasive authority such that a reasonable officer could not have believed that [her] actions were lawful." *Green*, 574 F.3d at 1300 (quotations, brackets and ellipses omitted). "[T]here is little doubt that deliberate indifference to an inmate's serious medical need is a clearly established constitutional right." *Mata*, 427 F.3d at 749; *see, e.g.*, *Sealock v. Colorado*, 218 F.3d 1205, 1210-11 (10th Cir. 2000) (concluding that shift commander's inaction constituted deliberate indifference where inmate stated he might be having a heart attack and displayed symptoms consistent with a heart attack). And it has been clearly established for over a decade that unreasonable reliance on the advice of a medical professional will not excuse deliberate indifference to a prisoner's serious medical needs. *See Johnson v. Doughty*, 433 F.3d 1001, 1010-11 (7th Cir. 2006) (observing that prison officials may rely on a medical professional's judgment *unless* the prisoner is obviously receiving inadequate care); *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004) (same); *Hamilton v. Endell*, 981 F.2d 1062, 1066-67 (9th Cir. 1992) ("By choosing to rely upon a medical opinion which a reasonable person would likely determine to be inferior, the prison officials took actions which may have amounted to the denial of

medical treatment, and the unnecessary and wanton infliction of pain.")

(quotation omitted), *overruled in part on other grounds by Saucier v. Katz*,

533 U.S. 194 (2001).

**CONCLUSION**

The judgment of the district court is AFFIRMED.

Entered for the Court


Michael R. Murphy
Circuit Judge
