# United States Court of Appeals

### For the Eighth Circuit

_____

No. 14-3280

_____

Regina Barton, as personal representative for the Estate of Jeffry Alan Barton

*Plaintiff - Appellee*

v.

Donnie Taber, individually and in his official capacity as the Malvern Chief of Police; Tim Callison, individually and in his official capacity as a Malvern Police Officer; Chad Ledbetter, individually as the Hot Spring County Sheriff; George Wright, individually and in his official capacity as Hot Spring County Jail Administrator; Amie Martin, individually and in her official capacity as Hot Spring County Deputy; Brian Orrell, individually and in his official capacity as Hot Spring County Deputy

*Defendant*s

Zachary Owens, individually and in his official capacity as a Arkansas State Trooper

*Defendant - Appellant*

Hot Springs County, Arkansas; City of Malvern, Arkansas; State of Arkansas

*Defendant*s

_____

Appeal from United States District Court
for the Western District of Arkansas - Hot Springs

_____

Submitted: September 21, 2015
Filed: April 27, 2016
_____

Before WOLLMAN, COLLOTON, and KELLY, Circuit Judges.
_____

WOLLMAN, Circuit Judge.

Regina Barton, as personal representative for the Estate of Jeffry Alan Barton (Barton), filed suit under 42 U.S.C. § 1983 and the Arkansas Civil Rights Act of 1993 (ACRA), Ark. Code Ann. § 16-123-105, alleging that Arkansas State Trooper Zachary Owens and other defendants denied Barton medical care, in violation of his Fourth, Eighth, and Fourteenth Amendment rights. Trooper Owens appeals from the district court's[1] denial of his motion to dismiss on the basis of qualified and statutory immunity. We affirm.

I.

On September 12, 2011, Barton was involved in a single-vehicle accident at an overpass located on U.S. Highway 270. Owens arrived at the accident scene, along with Malvern, Arkansas, Police Officer Tim Callison and other law enforcement officials. After the officers arrived, Barton almost fell to the ground on multiple occasions. He swayed and used his truck to steady himself. After a portable breath test indicated that Barton's blood-alcohol concentration was .11, the officers placed Barton under arrest. During the search of his person, Barton fell to the ground and was not responsive. Callison checked Barton for a pulse after he did not respond

_____

[1]The Honorable Robert T. Dawson, United States District Judge for the Western District of Arkansas, now retired.

to questions or commands. Because Barton could not stand on his own, Callison and Owens lifted Barton and placed him into Owens's patrol car.[2]

Owens transported Barton to the Hot Spring County Detention Center. Barton was unable to answer questions during the booking process, and when he did speak, his speech was slurred. At one point during the booking process, Barton fell off a bench onto the floor.

Barton was incarcerated in the Detention Center as a pretrial detainee and placed in a holding room, to which he was unable to walk without being assisted by jail trustees. Barton was found dead in the holding room shortly after midnight on September 13, 2011. An autopsy determined the cause of death to be a heart condition—anomalous right coronary artery, fatty infiltration of right ventricle and atrium of heart. The autopsy also revealed a small amount of ethanol, a small amount of hydrocodone, and a non-toxic level of an anti-anxiety medication.

Owens moved to dismiss the complaint for failure to state a claim on which relief could be granted, Fed. R. Civ. P. 12(b)(6), asserting that he was entitled to qualified immunity from the federal claim and statutory immunity from the ACRA claim, Ark. Code Ann. § 19-10-305(a). The district court dismissed the claims against Owens in his official capacity, but otherwise denied the motion, leading Owens to file this appeal.

---

[2]On appeal, Regina Barton has asserted several facts that she did not allege in the complaint. Our review of a motion to dismiss is limited to the facts alleged in the complaint, see Fed. R. Civ. P. 12(d), and we have considered only those allegations.

II.

Although ordinarily a denial of a pretrial motion is not appealable, interlocutory appeals from the denial of qualified and statutory immunity are permitted under the collateral-order doctrine. Burton v. Ark. Sec'y of State, 737 F.3d 1219, 1228 (8th Cir. 2013). We review *de novo* the denial of a motion to dismiss based on qualified and statutory immunity. Hager v. Ark. Dep't of Health, 735 F.3d 1009, 1013 (8th Cir. 2013). "Under Federal Rule of Civil Procedure 12(b)(6), the factual allegations in the complaint are accepted as true and viewed most favorably to the plaintiff." Hager, 735 F.3d at 1013 (citing Gross v. Weber, 186 F.3d 1089, 1090 (8th Cir. 1999)).

A. Qualified Immunity

State officials are entitled to qualified immunity for their discretionary acts unless those acts "violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). We thus ask: "(1) [whether] the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) [whether] the right was clearly established at the time of the deprivation." Howard v. Kan. City Police Dep't, 570 F.3d 984, 988 (8th Cir. 2008).

1. Constitutional Violation

Owens argues that the facts alleged in the complaint do not establish that he violated Barton's constitutional rights. A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Federal Rules require more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555

(2007)). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. We thus accept as true the facts alleged, but not legal conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Id.

Owens argues that the claim against him is not facially plausible, because the complaint mentions him in only four paragraphs, which he says do not allege a constitutional violation. The paragraphs allege that Owens had direct contact with Barton in the hours leading up to his death, responded to the scene of the accident, helped Callison lift Barton from the ground and place him in his patrol car, and transported Barton to the detention center. J.A. 3, 4-5. When those paragraphs are read in the context of the full complaint, however, the complaint states a facially plausible claim against Owens. As set forth above, the complaint alleges that Barton became unconscious at the scene of a vehicle accident, that Callison checked Barton's pulse because he was not responsive, that Barton could not stand or walk on his own, and that Barton could not answer questions and fell off the bench onto the floor at the detention center. J.A. 4-5. Accepting these allegations as true, it is reasonable to infer that Owens observed Barton's symptoms both at the scene of the accident and at the detention center. Thus, the proper inquiry is whether, viewing the facts in the light most favorable to the plaintiff, Owens's failure to take some action to secure medical care for Barton violated Barton's constitutional rights. As we discuss below, we conclude that it does.

To determine whether Owens's failure to seek medical care for Barton violated Barton's constitutional rights, we apply the Eighth Amendment "deliberate

indifference" standard.[3] See Jackson v. Buckman, 756 F.3d 1060, 1065 (8th Cir. 2014) (applying the Eighth Amendment deliberate-indifference standard to a pretrial detainee's claim of failure to provide medical care in violation of the due process clause of the Fourteenth Amendment). The deliberate-indifference standard requires "both an objective and subjective analysis." Hall v. Ramsey County, 801 F.3d 912, 920 (8th Cir. 2015) (quoting Scott v. Benson, 742 F.3d 335, 340 (8th Cir. 2014)).

To meet the objective component of the deliberate-indifference standard, the complaint must plead facts sufficient to demonstrate that Barton suffered from an objectively serious medical need. See Grayson v. Ross, 454 F.3d 802, 808-09 (8th Cir. 2006). "To be objectively serious, a medical need must have been 'diagnosed by a physician as requiring treatment' or must be 'so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" Jackson, 756 F.3d at 1065 (quoting Scott, 742 F.3d at 340). Owens argues that the complaint does not plead an objectively serious medical need because Barton's behavior would not indicate to a layperson that he was suffering from a heart condition that would later kill him. But the complaint was not required to allege that Owens knew of Barton's heart condition, only that Barton showed obvious signs of an objectively serious medical need. We determine whether an objectively serious medical need exists based on the attendant circumstances, irrespective of what the officer believes the cause to be. See Vaughn v. Gray, 557 F.3d 904, 909 (8th Cir. 2009) (denying qualified immunity to officers who claimed that they thought a prisoner's vomiting "was caused by the ingestion of shampoo"); see also McRaven v. Sanders, 577 F.3d 974, 981 (8th Cir. 2009) (denying qualified immunity where an inmate exhibited

_____

[3]We note that in our recent decision, Bailey v. Feltmann, No. 14-3859, 2016 WL 191929 (8th Cir. Jan. 15, 2016), we acknowledged disagreement regarding the proper standard to apply in denial-of-medical-care claims brought by arrestees. See Bailey, 2016 WL 191929, at *2; see also Kingsley v. Hendrickson, 135 S. Ct. 2466, 2473 (2015) (holding that the Fourteenth Amendment's objective reasonableness standard governs excessive-force claims brought by pretrial detainees).

-6-

symptoms of severe intoxication and circumstances suggested that the inmate had overdosed on prescription medications); Grayson, 454 F.3d at 809 (granting qualified immunity where an arrestee was under the influence of methamphetamines, but "sat calmly in the back of the patrol car, followed directions, answered questions posed, and remained quiet and seated on a bench inside the jail"). Although we can assume that most individuals arrested on intoxication-related charges are not in obvious need of prompt medical care, the complaint here has stated sufficient facts to show that Barton was experiencing a medical need so obvious that a layperson would recognize that he needed prompt medical attention. Accepting once again the truth of the complaint's allegations, Barton fell down at the scene of his accident, could not walk on his own, and became unresponsive such that an officer was obliged to check for a pulse. At the detention center, he could not answer questions and could not remain seated without falling over. While some of these alleged symptoms are consistent with those exhibited by intoxicated persons, when viewed in their totality and in the light most favorable to the non-moving party, they were sufficient to establish that Barton suffered from an objectively serious medical need.

The subjective component requires a showing that Owens actually knew that Barton needed medical care and disregarded "a known risk to the [arrestee's] health." Gordon ex rel. Gordon v. Frank, 454 F.3d 858, 862 (8th Cir. 2006) (citing Olson v. Bloomberg, 339 F.3d 730, 736 (8th Cir. 2003)). "This showing requires a mental state 'akin to criminal recklessness.'" Jackson, 756 F.3d at 1065 (quoting Gordon ex rel. Gordon, 454 F.3d at 862). A complaint must allege facts that demonstrate "more than negligence, more even than gross negligence." Id. (quoting Fourte v. Faulkner County, 746 F.3d 384, 387 (8th Cir. 2014)). Such a mental state can be inferred, however, from facts that demonstrate that a medical need was obvious and that the officer's response was "obviously inadequate." Thompson v. King, 730 F.3d 742, 747 (8th Cir. 2013) ("However, if a response to a known risk is obviously inadequate, this may lead to an inference that the officer 'recognized the inappropriateness of his conduct.'" (quoting Krout v. Goemmer, 583 F.3d 557, 567 (8th Cir. 2009))). From

his observations at the scene of the accident and at the Detention Center, Owens had direct knowledge of Barton's obvious need for prompt medical attention and yet took no steps to secure such care for Barton. Accordingly, we hold that the allegations in the complaint were sufficient to create an inference that Owens was deliberately indifferent to Barton's need for medical attention.

## 2. Clearly Established

Owens argues that Barton's constitutional right was not clearly established, because he acted as a reasonable officer would under the circumstances. "For a right to be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Meehan v. Thompson, 763 F.3d 936, 940 (8th Cir. 2014) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). We adopt the perspective of a reasonable officer at the scene, taking into account the information he possessed at the time. Id. "[F]or a plaintiff to overcome qualified immunity, existing precedent must have placed the constitutional question 'beyond debate.'" Hollingsworth v. City of St. Ann, 800 F.3d 985, 989 (8th Cir. 2015) (quoting City & County of San Francisco v. Sheehan, 135 S. Ct. 1765, 1774 (2015)). Whether an officer's denial of medical care violates an arrestee's constitutional rights is thus context-specific, for we do not "define clearly established law at a high level of generality." Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) (per curiam) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 742 (2011)). The appropriate inquiry, then, is whether a reasonable officer in September 2011 would have understood that failing to seek medical care for a post-vehicular accident arrestee who exhibited the symptoms Barton exhibited would violate the arrestee's constitutional rights. We conclude that McRaven v. Sanders and Grayson v. Ross, decided in 2009 and 2006, respectively, provide the relevant precedent.

McRaven involved a pretrial detainee who was arrested for driving while under the influence of drugs. 577 F.3d at 978. During the booking process, the officers

collected a urine sample that indicated the detainee was under the influence of marijuana, benzodiazepines, and opiates. Id. The detainee also informed the officers that he had taken several psychotropic medications. Id. A drug influence evaluation indicated that he appeared to have poor coordination, slurred speech, flushed skin on his face, and droopy eyelids; his blood pressure and temperature were "down"; and a blood alcohol test indicated that he had not consumed any alcohol. Id. The officers consulted with a nurse at the facility regarding whether they should transport the detainee to the hospital. The nurse, unaware of the results of the detainee's drug screening, concluded that he did not require hospitalization and that he was simply "sleeping off alcohol." Id. at 979. Later, the detainee was discovered in his cell, no longer breathing, which resulted in severe brain damage. Id. His guardian brought a § 1983 claim against the officers at the detention center, alleging that the officers were deliberately indifferent to the detainee's medical need. Id. The officers moved for summary judgment, claiming they were entitled to qualified immunity because they relied on the nurse's conclusion that the detainee did not have an objectively serious medical need. Id. at 980-81. We rejected this argument and held that in light of the officers' knowledge of the attendant circumstances, they could not rely on the nurse's recommendation. See id. at 981 (noting that the officers were aware of the drugs the detainee had consumed and that "circumstances suggested [the detainee] did not consume [them] in prescribed doses," that the detainee "exhibited symptoms of severe intoxication" and was clearly impaired, and that the nurse had not known all of the relevant facts when she made her recommendation).

By contrast, in Grayson, we granted qualified immunity to an arresting officer and a booking officer after a pretrial detainee died from "excited delirium as a result of acute methamphetamine intoxication and physical struggle." 454 F.3d at 808. Although the officers knew that the detainee had used methamphetamine, they did not know how much he had consumed. Id. at 806. During the detainee's arrest, he "sat calmly in the back of the patrol car, followed directions, [and] answered questions." Id. at 809. Similarly, while he was being booked and for the first several hours of his

detention, he was non-combative and able to answer questions. Id. at 810. We concluded that the detainee did not have an objectively serious medical need that would have been obvious to a layperson because his symptoms did not indicate a medical emergency. Id. at 809.

In both McRaven and Grayson, we considered the severity of the intoxicated detainees' symptoms and the context in which the symptoms presented. Thus, a reasonable officer in 2011 would have recognized that failing to seek medical care for an intoxicated arrestee who exhibits symptoms substantially more severe than ordinary intoxication violates the arrestee's constitutional rights, all the more so when the surrounding circumstances indicate that a medical emergency exists. See Thompson, 730 F.3d at 747-49 (discussing Grayson). As recounted above, the complaint alleged facts that Barton exhibited symptoms substantially more serious than ordinary intoxication and that Owens was aware of these symptoms and of the fact that Barton had recently been in a vehicular accident. Accordingly, we hold that, under these circumstances, a reasonable officer would "comprehend that he was violating [Barton's] clearly established constitutional rights." See Gladden v. Richbourg, 759 F.3d 960, 964 (8th Cir. 2014); see also Estate of Crouch v. Madison County, 682 F. Supp. 2d 862, 877 (S.D. Ind. 2010) (noting that a prisoner had an objectively serious medical need when he became unresponsive). It should go without saying that our holding should be read in light of the fact that it is based on the district court's denial of a Fed. R. Civ. P. 12(b)(6) motion. At this stage in the proceedings, we are required to treat the facts alleged in the complaint as true and make all reasonable inferences in favor of the plaintiff. This is a highly deferential standard, as opposed to that at the summary judgment stage, at which the parties must support their factual assertions with citations to an established record. We hold only that the complaint, marginally sufficient though it may be, has stated a claim, not that it will withstand further scrutiny.

## B. Statutory Immunity

Owens argues that he is entitled to statutory immunity under the ACRA because the complaint does not contain facts sufficient to demonstrate that Owens acted with malice. As relevant to this appeal, the ACRA states, "Officers . . . of the State of Arkansas are immune from liability and from suit . . . for damages for acts or omissions, other than malicious acts or omissions, occurring within the course and scope of their employment." Ark. Code Ann. § 19-10-305(a). The Supreme Court of Arkansas has defined malice as

> the intentional doing of a wrongful act without just cause or excuse, with an intent to inflict an injury or under circumstances that the law will imply an evil intent. . . . A conscious violation of the law . . . which operates to the prejudice of another person. A condition of the mind showing a heart . . . fatally bent on mischief.

Fuqua v. Flowers, 20 S.W.3d 388, 391 (Ark. 2000) (quoting *Malice*, Black's Law Dictionary (6th ed 1990)). Owens bases his argument on the premise that the statute provides more protection than qualified immunity. But the Supreme Court of Arkansas consistently has stated that "the immunity provided by section 19-10-305(a) is similar to that provided by the Supreme Court for federal civil-rights claims." Simons v. Marshall, 255 S.W.3d 838, 842 (Ark. 2007) (citing Fegans v. Norris, 89 S.W.3d 919, 924 (Ark. 2002)). But see Langford v. Norris, 614 F.3d 445, 465 (8th Cir. 2010) (denying qualified immunity to prison officials for plaintiff's federal civil-rights claims, but granting statutory immunity for the plaintiff's state law claims). We have concluded that the complaint alleges facts sufficient to create an inference that Owens acted with deliberate indifference, and we similarly conclude that the complaint alleges facts sufficient to create an inference of malice.

## III.

The judgment denying immunity is affirmed.

-11-

COLLOTON, Circuit Judge, dissenting.

In my view, the court goes too far in exposing a state trooper to liability for a death caused by an undiagnosed heart condition of a drunk driver. I would reverse the district court's order denying the motion to dismiss filed by Trooper Zachary Owens.

The complaint against Owens alleges that he responded to the scene of a one-vehicle accident in Arkansas. The driver, Jeffry Alan Barton, registered a blood-alcohol content of 0.11 and was placed under arrest, presumably for driving while intoxicated. The allegations are that Owens observed Barton swaying and using his truck for support while almost falling to the ground on multiple occasions. Generously construed, the complaint also asserts that Owens observed that Barton at one point fell to the ground, and was non-responsive for a time. (Another officer checked Barton for a pulse, and Barton must have demonstrated a heartbeat.) Owens later worked with other officers to lift Barton and place him into a patrol car, and Owens drove Barton to a detention center for booking. Although there is no allegation that Owens remained in the booking area after he transported Barton to the detention center, or that he participated in the booking process, the court presumes that Owens also observed that Barton was unable to answer questions during booking, spoke with slurred speech, and once fell off a bench and onto the floor. Barton later died in a holding cell due to a heart condition.

Even assuming all of the facts recounted above, Owens is entitled to qualified immunity. As the Supreme Court has emphasized, "qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (internal quotation marks omitted). The complaint must allege adequately that Owens violated a clearly established constitutional right of Barton. To determine that issue, the court must not "define clearly established law at a high level of generality." *Id*. "The dispositive question is whether the violative

-12-

nature of [the] *particular* conduct is clearly established." *Id*. "This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id*.

It was clearly established in September 2011, at least under the law of the Eighth Circuit, that a law enforcement officer must not act with deliberate indifference to the serious medical needs of an arrestee. *McRaven v. Sanders*, 577 F.3d 974, 979-81 (8th Cir. 2009). But this is a broad general proposition. The issue here is whether the facts alleged, in the specific context of this case, show that only a plainly incompetent state trooper, or a trooper who knowingly violates the law, would have turned Barton over to the custody of the detention center without seeking medical attention. In other words, it must be clearly established that the complaint's allegations are sufficient to show that Barton suffered from an objectively serious medical need, and that Owens exhibited deliberate indifference (i.e., criminal recklessness) to that need by failing to seek medical attention. The complaint and relevant precedents do not support a denial of qualified immunity.

The Constitution does not require an arresting law enforcement officer to seek medical attention for every arrestee who appears to be intoxicated. *E.g.*, *Burnette v. Taylor*, 533 F.3d 1325, 1333 (11th Cir. 2008); *Grayson v. Peed*, 195 F.3d 692, 696 (4th Cir. 1999); *Estate of Hocker v. Walsh*, 22 F.3d 995, 999-1000 (10th Cir. 1994); *Meier v. Cty. of Presque Isle*, 376 F. App'x 524, 529 (6th Cir. 2010). Owens knew that Barton was a drunk driver, and a reasonable state trooper with no medical training could have believed that his slurred speech, difficulty walking, inability to answer questions, and even temporary non-responsiveness were the results of intoxication that did not require immediate medical attention. On the facts alleged, it would not have been obvious to a layperson that Barton's symptoms exceeded those of acute intoxication. There is no allegation that Owens had any knowledge that Barton suffered from the heart condition that eventually caused his death. And there is no assertion that Owens knew how to distinguish symptoms of intoxication from those of an impending coronary.

-13-

The district court thought *Thompson v. King*, 730 F.3d 742, 748 (8th Cir. 2013), clearly established that Owens's conduct violated Barton's constitutional rights, but this conclusion was error. Assuming that controlling circuit precedent is a dispositive source of clearly established law, *cf. Carroll v. Carman*, 135 S. Ct. 348, 350 (2014) (per curiam), *Thompson* was decided in 2013, two years after Barton's death in 2011, so it could not provide clearly established law for this incident. *See Parker v. Boyer*, 93 F.3d 445, 447 (8th Cir. 1996).

The court relies instead on *McRaven v. Sanders*, 577 F.3d 974 (8th Cir. 2009), but the decision there on dissimilar facts did not put Owens on notice of a clearly established constitutional right in this case. The officers in *McRaven* knew that an arrestee had consumed a "cocktail of potent drugs" under circumstances that "strongly suggested" they were not taken in prescribed dosages, yet they failed to seek medical attention when the arrestee exhibited extreme symptoms of drug intoxication. Unlike Owens, who was unaware of Barton's heart condition, the officers in *McRaven* had specific reason to believe that the offender suffered from a serious medical need—a drug overdose—that distinguished him from an arrestee who had consumed excessive amounts of alcohol. The court also cites *Grayson v. Ross*, 454 F.3d 802 (8th Cir. 2006), but the officers in that case did not commit a constitutional violation, so the decision did not clearly establish any constitutional right transgressed by Owens. *Id.* at 809-10.

More instructive is a decision that unfortunately was not cited by either party. In *Martinez v. Beggs*, 563 F.3d 1082 (10th Cir. 2009), officers arrested a man named Ginn for public intoxication. The arresting officer reported that Ginn "was unable to stand." A witness testified that officers "picked up" Ginn and "dragged" him to a patrol car. The officer transporting Ginn to the detention center thought Ginn had "passed out, like most of your drunks do" during a ride to the facility. At the detention center, Ginn could not walk in a straight line, and officers helped to support his weight. Ginn was placed in a cell. Three hours later, he died from a heart attack due to coronary artery disease.

-14-

Ginn's estate sued the arresting officers, alleging that they knew that Ginn had consumed a large quantity of alcohol, could not walk without help, may have been unconscious for a short time, and was talking as if he were hallucinating. The plaintiff also sued two custodial officers, asserting that they knew Ginn was drunk, was too incoherent to be booked into jail, and had difficulty walking.

The court affirmed a grant of summary judgment for the officers because there was insufficient evidence to show deliberate indifference to the detainee's serious medical needs:

> [T]he sufficiently serious objective harm that Ginn faced was heart attack and death, and not acute intoxication. . . . The officers subjectively knew that Ginn was intoxicated, but there is no evidence to show that anyone would have known that Ginn would face an imminent heart attack or death, much less that the individual county defendants subjectively knew that Ginn was at risk of heart attack or death.

*Id*. at 1090.

So too here. Owens knew that Barton was a drunk driver, and Barton exhibited symptoms that a reasonable trooper could associate with acute intoxication. Owens had no reason to know that Barton suffered from an undiagnosed heart condition that would cause his death. Barton may have had an objectively serious medical need for treatment of his heart, but it was not a need to which Owens was deliberately indifferent under clearly established law on the facts alleged. I would therefore reverse the district court's order denying the motion to dismiss.

_____