**F I L E D**

**PUBLISH**

**December 26, 2006**

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

DAVID E. CALLAHAN,

     Plaintiff-Appellant,

v.

DAYTON J. POPPELL, Warden; RON
CHAMPION; SANDRA ATWOOD; DR.
MARK FOGLE; DR. JACK
GREGSTON; NURSE GLENN; DENNIS
COTNER, MAJOR; MAJOR POSVIC;
SGT. JOHNSON; MR. CUNNINGHAM;
MR. CROW; NURSE WILKERSON;
NURSE ARMSTRONG; NURSE
SIMON; OFFICER WILLIS; RON
WARD; LAWTON CORRECTIONAL
FACILITY; WACKENHUT
CORRECTIONS CORPORATION;
OKLAHOMA DEPARTMENT OF
CORRECTIONS; NURSE STORM; DR.
GUMERLOCK; NURSE HEATH; MR.
MILLER; OU MEDICAL CENTER,

     Defendants-Appellees.

No. 06-6090

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. No. 03-CV-551-F)

---

Submitted on the briefs:

David E. Callahan, pro se.

Jennifer L. Wright, Assistant Attorney General, State of Oklahoma, Oklahoma City, Oklahoma, for Defendant-Appellee Dennis Cotner.

Don G. Pope, Don G. Pope & Associates, P.C., Norman, Oklahoma, for Defendants-Appellees Sandra Atwood, Dr. Mark Fogle, Dr. Jack Gregston, Sgt. Johnson, and Lawton Correction Facility.

———————————

Before **HENRY, BRISCOE,** and **O'BRIEN**, Circuit Judges.

———————————

**BRISCOE**, Circuit Judge.

———————————

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

David Callahan, an Oklahoma prisoner appearing pro se, filed this action under 42 U.S.C. § 1983, alleging that the defendants' failure to provide him with a wheelchair following an injury violated his rights under the Eighth Amendment. The district court granted the defendants' motions for summary judgment, concluding that the Eleventh Amendment barred suit against one defendant in his official capacity and that the other defendants were not deliberately indifferent to serious medical needs.

Callahan now appeals both rulings against him. Along the way, Callahan attacks other alleged errors and attempts to add a claim under the Americans with Disabilities Act. Further, Callahan seeks leave to personally argue the case before the panel. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

-2-

I.

On April 17, 2001, while serving his prison sentence at Lawton Correctional Facility, Callahan slipped and fell. Letter from Sandra Atwood, RN, Health Services Administrator to Grievance Officer at 1. The prison's medical staff took X-rays, gave him medication, and provided a pair of crutches for use in moving around the prison. Id. Callahan requested a wheelchair, asserting that he could not walk on the crutches "due to severe pain." Request to Staff at 1 (dated April 18, 2001). The medical staff denied him a wheelchair, based on its determination that use of a wheelchair would weaken him by contributing to "further deterioration of [Callahan's] legs and back." Progress Note at 1. One physician working on Callahan's case worried that "[r]eliance on a wheelchair can lead to unnecessary invalidism and wasting of muscles" in cases, such as Callahan's, where there are no "surgical lesions." Aff. of Dr. Mark Fogle at 1 (hereinafter "Fogle Aff.").

Callahan asserts that the prison's Health Services Administrator, Sandra Atwood, initially authorized giving him a wheelchair, but that she was countermanded by a Sergeant Johnson in retaliation for Callahan's work in helping other inmates use the law library. Aplt. Br. at 4-7, 12-13, 25, 31-32, 41; Dep. of David Callahan at 57:18-23 (hereinafter "Callahan Dep."); Request to Staff at 1 (dated April 20, 2001). Atwood denies discussing with Sergeant Johnson whether Callahan needed a wheelchair. Dep. of Sandra Atwood at 16:22-25 (hereinafter "Atwood Dep."). Subsequently, Dr. Jack Gregston, one of the two doctors at the prison, authorized the use of a wheelchair on "a

short-term basis while we assessed" Callahan. Dep. of Dr. Jack Gregston at 30:8-13 (hereinafter "Gregston Dep."). At the time, Gregston did not know that Callahan had refused to use crutches or that the medical staff had denied his use of a wheelchair. Id. When Gregston's superiors learned that he had authorized a wheelchair, they informed him of the basis for their denial and reversed his decision. Id. at 30:17-31:13. Gregston's superiors told him that they feared that Callahan would "lose all ability to walk" if they allowed him to move about in a wheelchair. Id.

Callahan was also referred to Dr. R. Jones, an orthopedist. Id. at 31:19-32:15; Dep. of Dr. Mark Fogle at 18:2-22 (hereinafter "Fogle Dep."). Jones recommended, in part, that Callahan be provided a wheelchair, based on Callahan's representation that he would need to traverse long distances in the prison while eating and doing other daily activities. Letter from Dr. R. Jones at 1; Fogle Dep. at 18:25-19:20. After receiving the letter, Dr. Mark Fogle, the other doctor at the prison, discussed with Jones the basis for his wheelchair recommendation. Fogle Dep. at 18:25-19:20. Fogle told Jones that the prison was planning to house Callahan in the Medical Department. Id. Because Callahan would not need to walk long distances while housed in the Medical Department, Jones indicated that Callahan would not need a wheelchair while residing there. Id.

Callahan alleges that he fell repeatedly, contracted infections, and suffered pain from the use of the crutches instead of a wheelchair. Aplt. Br. at 10-12, 22-23, 40. Asserting violations of various constitutional rights, Callahan initially filed suit under 42 U.S.C. § 1983 in the Northern District of Oklahoma against Atwood, Gregston, Fogle,

Johnson, Dennis Cotner (the Medical Services Administrator for the Department of Corrections), and Lawton Correctional Facility, but the case was transferred to the Western District of Oklahoma. After much procedural wrangling between the parties, and after Callahan repeatedly requested appointment of counsel, the magistrate judge authorized the clerk's office to request counsel for Callahan.

The defendants thereafter filed dispositive motions regarding Callahan's Third Amended Complaint. When Callahan moved to amend his complaint a fourth time to limit his claims to a sole count alleging an Eighth Amendment violation, the parties stipulated that the court could treat the briefing on the motions regarding the Third Amended Complaint as if they had been filed regarding the Fourth Amended Complaint. The district court subsequently adopted the magistrate judge's recommendations, finding that the Eleventh Amendment barred suit against Cotner in his official capacity, and that there were no genuine issues of material fact on Callahan's Eighth Amendment claim concerning Cotner in his personal capacity, Lawton Correctional Facility, and the remaining defendants in their personal and official capacities. As a result, the district court dismissed Cotner in his official capacity without prejudice and granted summary judgment in favor of the other defendants (and Cotner in his personal capacity). This appeal followed.

II.

We review the district court's holding on summary judgment and the Eleventh Amendment de novo. Carpenter v. Boeing Co., 456 F.3d 1183, 1192 (10th Cir. 2006); Joseph A. v. Ingram, 275 F.3d 1253, 1259 (10th Cir. 2002).

A.

We turn first to the district court's decision to dismiss Cotner, in his official capacity, on the basis of Eleventh Amendment immunity. When a suit alleges a claim against a state official in his official capacity, "the real party in interest in the case is the state, and the state may raise the defense of sovereign immunity under the Eleventh Amendment." Branson Sch. Dist. RE-82 v. Romer, 161 F.3d 619, 631 (10th Cir. 1998). Callahan's attorney indicated that he was asserting the Eighth Amendment claim against all of the defendants, including Cotner, in their personal and official capacities. Report and Recommendation at 1 n.1. The defense of sovereign immunity is hence applicable, unless Oklahoma has waived that defense or Callahan "seeks only prospective injunctive or declaratory relief against state officials for an ongoing violation of federal law." Branson Sch. Dist. RE-82, 161 F.3d at 632. Oklahoma has not waived sovereign immunity against § 1983 claims in federal district court. Ramirez v. Oklahoma Dep't of Mental Health, 41 F.3d 584, 589 (10th Cir. 1994). Furthermore, Callahan only sought damages from Cotner, not prospective relief. Fourth Am. Compl. at 3. Because sovereign immunity bars Callahan's claim against Cotner in his official capacity, the district court's dismissal of the claim against Cotner in his official capacity was proper.

-6-

B.

The district court also correctly granted summary judgment on Callahan's Eighth Amendment claim to Lawton Correctional Facility, Cotner in his personal capacity, and the remaining defendants in their personal and official capacities. Thirty years ago, the Supreme Court announced that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 104 (1976) (citation omitted). The Court carefully noted, however, that "an inadvertent failure to provide adequate medical care" does not give rise to an Eighth Amendment violation. Id. at 105-06. "Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." Id. at 106. Instead, a prisoner must have suffered "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id.

Deliberate indifference has objective and subjective components. Kikumura v. Osagie, 461 F.3d 1269, 1291 (10th Cir. 2006). "The objective component of the test is met if the harm suffered is 'sufficiently serious' to implicate the Cruel and Unusual Punishment Clause." Id. (citations omitted). We assume for purposes of resolving this appeal that Callahan satisfies the objective component and turn our attention to the subjective component.

To prevail on the subjective component, the prisoner must show that the defendants "knew he faced a substantial risk of harm and disregarded that risk, by failing

to take reasonable measures to abate it." Id. at 1293 (citation and internal quotation marks omitted). Callahan alleges that the defendants knew he faced a risk of injury if he was not allowed to use a wheelchair and yet they forced him to use crutches. The evidence in the record, however, indicates that the medical staff believed that the greater threat to Callahan arose from his use of a wheelchair, because continued use of the wheelchair would result in muscle atrophy and imperil his ability to walk. Progress Note at 1; Fogle Aff. at 1; Gregston Dep. at 30:17-31:13.

As proof that the defendants disregarded his medical needs as part of a retributive plot, Callahan points to two instances where the defendants allegedly ignored a doctor's recommendation that he be given a wheelchair. First, Gregston authorized the use of a wheelchair until his superiors overruled him. Yet it is undisputed that, at the time of his interaction with Callahan, Gregston did not know that Callahan had refused to use crutches, or that the medical staff had denied his use of a wheelchair because they feared his leg muscles would atrophy. Gregston Dep. at 30:8-31:13. Second, although Jones initially recommended a wheelchair for Callahan, Jones altered that assessment upon learning that Callahan would not need to walk far while he was housed in the Medical Department. Fogle Dep. at 18:25-19:20.

Callahan also accuses Johnson of interfering in the matter by persuading Atwood to alter course at the beginning of this episode. Callahan offers no evidence, however, that Atwood changed her mind because of Johnson's influence. At most, Callahan testifies that, "[o]bviously, Mr. Johnson had spoken with her and turned her against me.

It was quite obvious, because he was standing behind her laughing like a hyena." Callahan Dep. at 57:20-23. Beyond his conclusory allegation, Callahan has no personal knowledge or other evidence that Johnson had, in fact, blocked necessary treatment. To the contrary, Atwood specifically denied ever discussing Callahan's treatment with Johnson. Atwood Dep. at 16:22-25.

Callahan's case boils down to a contention that he had a right to a particular course of treatment: the use of a wheelchair. Both this court and our sister circuits have rejected such an expansive view of the rights protected by the Eighth Amendment. See Green v. Branson, 108 F.3d 1296, 1304 (10th Cir. 1997) ("We are persuaded that a showing of deliberate refusal to provide medical attention, *as opposed to a particular course of treatment*, coupled with falsification of medical records may give rise to an Eighth Amendment violation and is cognizable under 42 U.S.C. § 1983.") (emphasis added); Dulany v. Carnahan, 132 F.3d 1234, 1240 (8th Cir. 1997) ("[A] prison doctor remains free to exercise his or her independent professional judgment and an inmate is not entitled to any particular course of treatment."); Snipes v. DeTella, 95 F.3d 586, 591 (7th Cir. 1996) ("Medical decisions that may be characterized as 'classic examples of matters for medical judgment,' such as whether one course of treatment is preferable to another, are beyond the [Eighth] Amendment's purview.") (citing Estelle, 429 U.S. at 107). At worst, the defendants may have committed malpractice, but the Eighth Amendment does not redress such a claim. See Estelle, 429 U.S. at 107 (determining that a decision not to take an X-ray is, "[a]t most," medical malpractice that does not fall under the Eighth

-9-

Amendment). To succeed on an Eighth Amendment claim, as opposed to a medical malpractice claim under state tort law, a plaintiff is required to identify "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 106. Because Callahan failed to show such deliberate indifference, the district court did not err in granting summary judgment to the defendants.[1]

C.

There are a few remaining issues to address. First, Callahan goes to great pains to assert that he has "fully" exhausted his administrative remedies. On appeal, the defendants do not dispute that Callahan exhausted his administrative remedies before filing suit. We therefore need not address that issue. Garrett v. Fleming, 362 F.3d 692, 694 n.2 (10th Cir. 2004).

In his opening brief, Callahan introduces a claim under Title II of the Americans with Disabilities Act that was not pled in his Fourth Amended Complaint. Compare Aplt. Br. at 44, with Fourth Am. Compl. at 1-3. As we have noted, a "'pleading that has been amended under Rule 15(a) supersedes the pleading it modifies and remains in effect throughout the action unless it subsequently is modified.'" Gilles v. United States, 906 F.2d 1386, 1389 (10th Cir. 1990) (citation omitted). As a general rule, issues that are not

---

[1] Callahan also seems to argue that Cotner violated his constitutional rights by obstructing Callahan's efforts to exhaust his state administrative remedies. Aplt. Reply to Cotner Br. at 2-3. If Callahan means to assert that Cotner somehow violated his right to due process through interference with the normal course of his administrative appeals, Callahan did not plead this claim in his Fourth Amended Complaint, which stated only a cause of action under the Eighth Amendment for denial of the use of a wheelchair.

raised before the district court are waived.  Hicks v. Gates Rubber Co., 928 F.2d 966, 970 (10th Cir. 1991).  Because Callahan did not allege an ADA claim in his Fourth Amended Complaint, he is barred from raising this claim on appeal.

Next, Callahan appears to allege that his appointed attorney omitted from the Fourth Amended Complaint, contrary to his instructions, a due process claim.  Even if this is true, and Callahan has offered no evidence that it is true, the Supreme Court has emphasized that "each party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.'"  Link v. Wabash R. Co., 370 U.S. 626, 634 (1962) (citation omitted).  Any other rule would entail "visiting the sins of plaintiff's lawyer upon the defendant."  Id. at 634 n.10 (emphasis omitted).  Callahan repeatedly requested the magistrate judge to appoint counsel, and the magistrate judge eventually found counsel for Callahan. Callahan acquiesced in the choice of counsel and expressed his thanks to the court for counsel.  See Emergency Mot. Seeking Clarification on Appointment of Counsel for the Pl. and Other Relating Issues of Emergency at 1.  Callahan cannot now avoid the strategic choices of his counsel.[2]

Callahan also asserts that the district court erred in granting the defendants an extension of time of thirty days to respond to Callahan's Second Amended Complaint.

---

[2] According to his attorney, however, Callahan did *not* disagree with limiting the Fourth Amended Complaint to just an Eighth Amendment violation.  Courtroom Minute Sheet at 1.

We find no abuse of discretion in the district court's ruling.  Cf. In re Rains, 946 F.2d 731, 732 (10th Cir. 1991) (per curiam).

Finally, on November 20, 2006, Callahan filed an "emergency" motion seeking leave to personally argue the case before the panel.  In light of our determination that oral argument would not materially assist the determination of this appeal, Callahan's request is moot.

III.

The district court's order dismissing Cotner in his official capacity and granting summary judgment in favor of Cotner in his personal capacity, Lawton Correctional Facility, and the remaining defendants in their official and personal capacities is AFFIRMED.  Callahan's request for appointment of counsel is DENIED.  Callahan's "Emergency Motion Pertaining to the Above Case/Most Recent Court Order from the Court Clerk, Ms. Shumaker" is DENIED.  Callahan's motion for leave to personally argue the case is DENIED as moot.