**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

JAMES ROGER DUNCAN,

    Plaintiff - Appellant,

v.

JOHN W. HICKENLOOPER, Governor;
RICK RAEMISCH, Executive Director;
MILYARD, Warden; FALK, Warden;
LUECK, Case Manager,

    Defendants - Appellees.

No. 15-1034
(D.C. No. 1:14-CV-00301-REB-BNB)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **PORFILIO**, and **PHILLIPS**, Circuit Judges.
_____

    James Roger Duncan, a pro se Colorado inmate, complains that he was

exposed to contaminated drinking water while confined at the Sterling Correctional

Facility (SCF), in Sterling, Colorado. He brought this action under 42 U.S.C. § 1983,

alleging among other things that several state officials violated the Eighth

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value. *See* Fed. R. App. P.
32.1 and 10th Cir. R. 32.1.

Amendment because they knew of the contamination and were deliberately indifferent to it. The district court dismissed the Eighth Amendment claims under Fed. R. Civ. P. 12(b)(6). Exercising jurisdiction under 28 U.S.C. § 1291, we affirm in part, reverse in part, and remand for further proceedings.

## I. Background

### A. Facts

According to the complaint, the drinking water at SCF has been contaminated with uranium and trihalomethanes since the facility opened in 1998. Prison officials and Colorado's governors have known about the contamination but have done nothing to rectify the problem. Instead, officials at the Colorado Department of Corrections (CDOC) conspired to cover up the magnitude of the contamination, forcing Mr. Duncan to drink the water for some 15 years. An alternative supply of drinking water was provided to prisoners from a CDOC facility in Cañon City, but that supply is also contaminated with uranium, and prison staff drink bottled water. Mr. Duncan filed grievances over the matter, but his grievances were denied by the governors, wardens, and case managers.

Mr. Duncan attached to his complaint several documents, including (1) a portion of a memo issued by CDOC Executive Director Rick Raemisch reporting that on February 4, 2013, a "violation" was issued to Sterling for exceeding the standard for uranium in the water (the Raemisch memo), R. at 25; (2) a notice issued by Sterling dated February 21, 2008, reflecting violations of the drinking-water standard for uranium and advising residents to use an alternative source of drinking water;

2

(3) a notice issued by Sterling indicating violations in June 2012 of the drinking-water standard for trihalomethanes and suggesting that residents use an alternative source of drinking water; and (4) an online news article dated August 23, 2013, describing the contamination in Sterling and questioning the cost-effectiveness of CDOC's decision to transport alternative drinking water from Cañon City. These documents may be properly considered on a motion to dismiss because they are attached to the complaint, they are central to the claims, and their authenticity is not in dispute. *See Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002).

### B. Procedural History

The complaint named as defendants Governor John Hickenlooper and former Governor Bill Ritter, CDOC Executive Director Rick Raemisch, SCF Wardens Kevin Milyard and James Falk, and SCF case manager Jim Lueck (Defendants). The only claims pursued on appeal are that Mr. Duncan's Eighth Amendment rights were violated by Defendants' deliberate indifference to an unconstitutional condition of confinement.[1] He sought compensatory and punitive damages, as well as declaratory and injunctive relief. Defendants moved to dismiss, arguing (1) that claims for monetary damages from Defendants in their official capacities are barred by the

---

[1] The other claims alleged violations of Mr. Duncan's First, Fifth, and Fourteenth Amendment rights. Mr. Duncan makes sporadic references to his due-process and equal-protection rights, but these claims are not adequately developed on appeal. *See Holmes v. Colo. Coal. for Homeless Long Term Disability Plan*, 762 F.3d 1195, 1199 (10th Cir. 2014) (declining to consider issues not adequately briefed on appeal).

3

Eleventh Amendment, (2) that the complaint failed to state a plausible Eighth Amendment claim, and (3) that they were entitled to qualified immunity.

On November 17, 2014, a magistrate judge recommended that the motion to dismiss be granted. Although the complaint did not specify whether Defendants were sued in their official capacities, the magistrate judge determined that any request for money damages against Defendants in their official capacities was barred by the Eleventh Amendment. The magistrate judge also determined that insofar as the complaint sought relief against Defendants in their individual capacities, it did not state a claim because Mr. Duncan failed to allege specific facts showing that Defendants knew his health was at risk from the contaminated water or that any of them "created a policy that created contamination of the water." R. at 233. According to the magistrate judge, all he provided were "vague and conclusory allegations that they refused to allow him to drink unpolluted water." *Id.*

The magistrate judge warned Mr. Duncan that he had 14 days (or until December 2, 2014) to file specific, written objections or waive his appellate rights. After the deadline passed, the district court issued an order on December 11 adopting the magistrate judge's recommendation under plain-error review. The court entered a separate final judgment the next day. Five days later, however, Mr. Duncan asked the court to consider his untimely objections because he had been under medical care from October 20 through December 4, 2014, and he did not receive his legal mail until December 5, after the December 2 deadline. On December 24 the district court overruled the objections. It noted that they were untimely (although it did not

4

specifically address Mr. Duncan's excuse for being tardy) and that even if the court were to consider them, they did not warrant reversal of the judgment. The court reasoned that nothing in the attachments to Mr. Duncan's complaint "supports the further inference to plausibly suggest that any defendant was deliberately indifferent to a substantial risk of harm to plaintiff as a result of [the] condition . . . ." R. at 245. The court stated that Mr. Duncan's "insistence that all the defendants knew about the pollution is simply [too] vague, global, and factually unsubstantiated to survive a motion to dismiss." *Id.* Mr. Duncan again objected, but the court construed the filing as a motion to reconsider and denied it. This appeal followed.

## II. Analysis

### A. Firm Waiver Rule

At the outset we must consider whether Mr. Duncan waived his appellate rights by failing to timely object to the magistrate judge's report and recommendation. Under the firm-waiver rule, the "failure to make timely objections to the [magistrate judge's] findings or recommendations waives appellate review of both factual and legal questions." *Cohen v. Longshore*, 621 F.3d 1311, 1318 (10th Cir. 2010) (internal quotation marks omitted). But "the firm waiver rule does not apply when (1) a *pro se* litigant has not been informed of the time period for objecting and the consequences of failing to object, or when (2) the interests of justice require review." *Duffield v. Jackson*, 545 F.3d 1234, 1237 (10th Cir. 2008) (internal quotation marks omitted).

The first exception appears to apply here. Mr. Duncan has prosecuted this suit pro se and asserts that he was hospitalized throughout the entire objection period and did not receive any legal mail, including (presumably) the report and recommendation and its notice of the time for objecting and the consequences of failing to do so. He told the district court that he "was under medical care [f]rom October 20, 2014 to December 4, 2014 and . . . did not get his legal mail until the night of [December] fifth." R. at 240. And on appeal he said that he had been hospitalized for back surgery from October 20 through approximately November 2 and then "was transferred to the [Denver Reception & Diagnostic Center] (DRDC) the CDOC Intake part, at the medical department of the DRDC . . . [with] a case of pneumonia and had to stay there for four (4) weeks." Aplt. Memo Br. at 1 (filed in response to the Clerk's order dated January 28, 2015). He represented that during this time he received no legal mail and could do no legal work. Because Mr. Duncan may not have received the magistrate judge's report and recommendation and therefore was not informed of the deadline for objecting and the consequences of failing to object, we will not apply the firm-waiver rule.

*B. Eighth Amendment*

Mr. Duncan contends that the district court erred in dismissing his Eighth Amendment claim for failure to state a plausible claim for relief. (He does not, however, pursue any claims for damages against Defendants in their official capacities or any claim against Governor Ritter.) We review de novo the dismissal under Rule 12(b)(6), assuming the factual allegations to be true and asking "whether

6

it is plausible that the plaintiff is entitled to relief." *Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009). Because Defendants raised the defense of qualified immunity, Mr. Duncan "bears a heavy two-part burden to show" both that defendants' actions violated a constitutional or statutory right and that the right was clearly established. *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (internal quotation marks omitted). "[A] right is clearly established [when] it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* (internal quotation marks omitted). In the context of a Rule 12(b)(6) motion, "it is the defendant's conduct *as alleged in the complaint* that is scrutinized for objective legal reasonableness." *Id.* (internal quotation marks omitted). We afford Mr. Duncan's pro se materials a liberal construction but do not act as his advocate. *See United States v. Pinson*, 584 F.3d 972, 975 (10th Cir. 2009).

A prison official's deliberate indifference to an inmate's safety may violate the Eighth Amendment's ban on cruel and unusual punishment. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To survive a motion to dismiss, the inmate must allege both the objective and subjective components of his claim. To satisfy the objective element, the alleged deprivation must be "sufficiently serious"; that is, it must expose the inmate to a "substantial risk of serious harm." *Id*. (internal quotation marks omitted). To satisfy the subjective element, the prison official must have acted with deliberate indifference to the inmate's health or safety; the official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference," *id.*

7

Mr. Duncan satisfied the objective prong by alleging facts showing that the contamination exposed him to a substantial risk of serious harm. The notice issued by Sterling in February 2008 states that some people exposed to elevated uranium levels in drinking water "over many years may have an increased risk of getting cancer and [k]idney toxicity." R. at 26. The 2012 notice similarly cautions that some consumers exposed to excessive trihalomethanes "over many years may experience problems with their liver, kidneys, or central nervous system, and may have an increased risk of getting cancer." *Id.* at 27. These notices advise consumers to drink water from an alternative source, and the Raemisch memo, which acknowledges the long-term risks of elevated uranium levels, indicates that water from an alternative source will be provided to inmates "as a precautionary measure," *id.* at 25.[2] Also, Mr. Duncan sufficiently alleges that he was personally injured by the exposure. He claims that a CT scan confirms that a cyst on one of his kidneys is causing blood to discharge into his urine; that Jacqueline A. Nemer, M.D. said that he has nerve damage to his liver as a "direct result of radiation exposure," *id.* at 21; that a physician's assistant told him his thyroid gland has "shut down" because there was "too much uranium in [his] system," *id.* at 22; and he cites a host of ailments,

---

[2] The Raemisch memo may suggest that the contamination from uranium did not pose an objectively serious risk of harm because the contamination only slightly exceeded the safe-water standard. But the city's 2008 notice of elevated uranium levels documented a higher contamination level. And because these levels of uranium may have persisted in the drinking water from 2008 through 2013, we cannot say at this stage of the proceedings that there was no objectively severe risk of harm.

including kidney and immune-system dysfunction, disorders of his nervous system, degenerative spine conditions, chronic lung and liver disease, and "extreme, daily abdominal pain," *id.* at 21. In our view, Mr. Duncan has plausibly alleged an objectively serious risk of harm. We therefore turn to the subjective element of the claims for each group of Defendants.

### 1. Governor Hickenlooper

Mr. Duncan alleges that Governor Hickenlooper knew that polluted water was being forced on inmates but remained deliberately indifferent to the risk of harm. But a plaintiff cannot "merely recite[] . . . element[s] of a [deliberate-indifference] claim without providing the facts from which one could draw such a conclusion." *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013). Mr. Duncan does not indicate how the governor knew of the contamination, such as by receiving one of the notices attached to Mr. Duncan's complaint. Although he refers to "documents from [the governor] dated July 25, 2013," R. at 15, those documents are not summarized or attached to the complaint. Mr. Duncan avers only that "[t]hese [d]ocuments are all about this place Sterling Correctional facility and its water[.]" *Id.* at 16 (emphasis omitted). Without any facts to imply the governor's knowledge, Mr. Duncan has failed to "nudge [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008) (internal quotation marks omitted).

9

## 2. *Executive Director Raemisch*

Mr. Duncan alleges that Director Raemisch "knows about and has or was the one that ordered the polluted water to be shipped to [SCF]." R. at 10. But he alleges no facts suggesting that the shipped water was contaminated, or that Director Raemisch knew it was, so the allegation need not be credited as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009) ("[T]he Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context."). And even though Director Raemisch knew of the contaminated water supplied by Sterling, the attachments to Mr. Duncan's complaint refute any allegation that he was deliberately indifferent to the problem. Director Raemisch was appointed executive director in June 2013,[3] and although the Raemisch memo is undated, the online article of August 23, 2013, states that water was already being transferred from Cañon City. Director Raemisch's prompt action demonstrates an intent to abate the risk. *See Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006) ("To prevail on the subjective component, the prisoner must show that the defendants knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." (internal quotation marks omitted)).

---

[3] We take judicial notice that Director Raemisch was appointed on June 14, 2013. *See* https://www.colorado.gov/pacific/governor/cabinet (last visited November 2, 2015).

10

*3. Wardens Milyard and Falk*[4]

Mr. Duncan alleges that Wardens Milyard and Falk (1) knew about the polluted water, (2) did nothing to correct the problem, and (3) refused to allow him to drink unpolluted water from 1999 through 2013.[5] We note the following in support of these allegations: Sterling's notice of elevated uranium levels was distributed to consumers on February 21, 2008, and the city's notice of elevated trihalomethane levels appears to have been distributed in July and August 2012. Because SCF's drinking water is supplied by Sterling, it is reasonable to infer that the wardens received these notices. And because the notices in 2008 and 2012 advised consumers to drink water from an alternative source to avoid serious health risks, including cancer, kidney and liver damage, and problems with the central nervous system, one can infer that the wardens knew about the contamination and the attendant health risks as of 2008. This knowledge, coupled with Mr. Duncan's allegations that the wardens did nothing to abate the risk of harm (the Raemisch memo indicates that alternative drinking water was not provided to SCF inmates until 2013), states a plausible claim that Wardens Milyard and Falk were deliberately indifferent. We

---

[4] Mr. Duncan alleges that Warden Milyard "was the Ex-Warden" and Warden Falk "is the Warden now at [SCF]." R. at 10.

[5] Mr. Duncan also alleged that Warden Falk ordered that contaminated water be trucked in from Cañon City, but, again, we need not credit this allegation to the extent it asserts the water from Cañon City was polluted.

11

therefore reverse the dismissal of the Eighth Amendment claims against them and remand those claims to the district court to determine the wardens' liability, if any.[6]

### 4. Case Manager Lueck

Finally, Mr. Duncan alleges that case manager Lueck denied his grievance and refused to let him complete the grievance process, knowing that the polluted water was being forced on inmates. But the "denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983." *Gallagher*, 587 F.3d at 1069. Simply knowing about the contamination is not enough. *See Stewart v. Beach*, 701 F.3d 1322, 1328 (10th Cir. 2012) (evidence that warden denied grievance appeal knowing of the alleged violation was insufficient to show personal participation in the violation). Mr. Duncan fails to state a plausible claim against case manager Lueck.

### III. Conclusion

We reverse the district court's dismissal of Mr. Duncan's Eighth Amendment claims against Wardens Milyard and Falk and remand those claims to the district court for further proceedings consistent with this disposition. In all other respects, we affirm the district court's judgment.

We grant Mr. Duncan's motion to proceed in forma pauperis, but we remind

---

[6] We express no opinion on the viability of Mr. Duncan's request for prospective injunctive relief, which, given our disposition, remains pending.

12

him that he must continue making partial payments until his filing and docketing fees are paid in full.

Entered for the Court


Harris L Hartz
Circuit Judge