FILED
United States Court of Appeals
Tenth Circuit

April 14, 2017

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

ALBERT BENJAMIN HILL,

    Plaintiff - Appellant,

v.

CORRECTIONS CORPORATION OF
AMERICA; LOUIS CHARLES
CABILING, M.D.; LYNNE THOMPSON,
N.P.;

    Defendants - Appellees,

and

FREDERICK STEINBERG, M.D.,

    Defendant.

No. 16-1299
(D.C. No. 1:14-CV-02960-MSK-MJW)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **LUCERO**, and **HARTZ**, Circuit Judges.
_____

Albert Benjamin Hill, a state prisoner, filed this action against Corrections

Corporation of America (CCA) and three healthcare providers at the Crowley County

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Correctional Facility—Nurse Lynne Thompson,[1] Dr. Louis Cabiling, and Dr. Frederick Steinberg—alleging that they failed to provide adequate medical treatment for his wrist injury. He sought relief under state law and brought a claim under 42 U.S.C. § 1983 for a violation of his rights under the Eighth Amendment. Mr. Hill dismissed his claims against Dr. Steinberg, and the district court granted summary judgment in favor of the remaining defendants on the § 1983 claims, concluding that the individual defendants were not deliberately indifferent to Mr. Hill's serious medical needs and that he had not established a basis for holding CCA liable for the allegedly inadequate care. The court then dismissed without prejudice the state-law claims, declining to exercise supplemental jurisdiction. Although Mr. Hill named Nurse Thompson, Dr. Cabiling, and CCA in his notice of appeal, his opening brief does not address the merits of his claims against CCA, so he has waived any challenge to the dismissal of those claims. *See Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007). On the claims against the two remaining providers, we exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

## I.  Background

Mr. Hill injured his wrist while exercising on November 1, 2012. He sought medical attention three days later and was seen by a nurse the following day. The nurse wrapped his wrist with a bandage, told him to ice it and to take ketoprofen for the pain, and noted in his file that he had requested an x ray. The matter was referred to Defendant Nurse Thompson, the nurse practitioner responsible for prisoners' acute

---

[1] In the record she is also referred to as Lynne Cappellucci.

healthcare needs at the facility. After reviewing Mr. Hill's file sometime that month, Nurse Thompson ordered an x ray, which was taken on November 28.

The radiologist who reviewed the x ray reported that it was normal but showed some soft-tissue swelling. Nurse Thompson saw Mr. Hill on December 4, told him about the x-ray results, gave him a splint for his wrist, and prescribed a muscle rub. She scheduled a follow-up visit for three weeks later.

Two weeks later, Nurse Thompson saw Mr. Hill again, this time concerning pain in his hip. She filed a request for Mr. Hill to see an orthopedic surgeon about his hip but did not examine his wrist during this visit. The request was approved, and Mr. Hill saw an orthopedic surgeon on February 11, 2013. At that appointment, in response to Mr. Hill's complaints about his wrist, the orthopedic surgeon had more x rays taken and, based on those, diagnosed him with "a possible scapholunate dissociation." Aplt. App. at 156. He provided Mr. Hill with a new splint. His report states: "I went ahead and ordered MRI and will follow up with those MRI results." *Id.*

An MRI on April 19 indicated that Mr. Hill had a "[s]capholunate ligamentous tear." *Id.* at 83. There is no evidence of when Nurse Thompson first received the MRI results, but upon a recommendation by the orthopedic surgeon, she requested on June 19, 2013, that Mr. Hill see a hand surgeon. The hand surgeon saw him on December 20, 2013, and again on February 7, 2014, but ultimately recommended that Mr. Hill not undergo surgery.

3

Defendant Dr. Cabiling was the doctor responsible for providing and supervising healthcare for prisoners with chronic problems and serious medical needs. For administrative purposes he is listed as the healthcare provider or the referring or ordering physician on documents related to Mr. Hill's medical care, some of which show his name, initials, or signature. As Mr. Hill concedes in his complaint, however, "There is nothing in the medical record which indicates that Dr. Cabiling evaluated [him] or was consulted regarding his wrist." *Id.* at 14.

Mr. Hill brought this action in October 2014. His core assertions were that delays in getting treatment for his wrist exacerbated the injury, rendering his wrist "irreparable," and that defendants were responsible for those delays. *Id.* at 15-16. He alleged that "[n]one of the individual Defendants acted with promptness required by the standard of care to prevent permanent pain and disability." *Id.* at 16.

In their motion for summary judgment the defendants asserted that Mr. Hill had not shown deliberate indifference by either Nurse Thompson or Dr. Cabiling. They argued that Nurse Thompson was not aware that Mr. Hill's injury posed an excessive risk to his health or safety and that she had not disregarded his medical needs because she had taken appropriate steps to diagnose and treat the injury. The district court agreed. With respect to the initial x ray, the court determined that Mr. Hill had not shown that Nurse Thompson could have obtained it sooner or that had she done so the treatment of his injury would have been materially different. The court also noted that upon receiving the x-ray results, Nurse Thompson provided a splint and prescribed a muscle rub, and that Mr. Hill did not request further treatment

4

for his wrist when he saw her again two weeks after that visit. With respect to the MRI, the court said that Nurse Thompson had a reasonable basis for believing that the orthopedic surgeon had assumed responsibility for following up on any additional treatment that might be needed. And it said that in the absence of any evidence of when Nurse Thompson learned of the MRI results, Mr. Hill had failed to establish any delay attributable to her between when the MRI results were received and when he was referred to a hand surgeon. Further, the court determined that there was no evidence that Nurse Thompson was responsible for any of the six-month delay between when the referral was made and when Mr. Hill had his first appointment.

In their motion for summary judgment the defendants also argued that Mr. Hill failed to establish deliberate indifference by Dr. Cabiling because he had no direct involvement with Mr. Hill's course of treatment. Again the district court agreed, ruling that even though Dr. Cabiling was responsible for authorizing certain procedures related to Mr. Hill's care and had access to the MRI results, such minimal evidence of involvement in Mr. Hill's medical care did not show that Dr. Cabiling knew of and disregarded an excessive risk to Mr. Hill's health or safety.

Mr. Hill contends that the district court erred by granting summary judgment because there are genuine issues of material fact concerning whether Nurse Thompson and Dr. Cabiling were deliberately indifferent to his serious medical needs. He also argues that the court erred by denying him the opportunity to respond to evidence the defendants submitted with their reply brief in support of their motion for summary judgment.

5

**II. Analysis**

**A. Summary Judgment**

We review de novo the district court's grant of summary judgment, applying the same standard as the district court. *See Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "We construe the factual record and the reasonable inferences therefrom in the light most favorable to the nonmoving party." *Mata v. Saiz*, 427 F.3d 745, 749 (10th Cir. 2005).

"A prison official's deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment." *Sealock*, 218 F.3d at 1209. "The test for deliberate indifference is both objective and subjective." *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). The objective component requires that the harm be sufficiently serious to implicate the Eighth Amendment. *See id.* "The subjective prong of the deliberate indifference test requires the plaintiff to present evidence of the prison official's culpable state of mind." *Mata*, 427 F.3d at 751. A plaintiff may prevail on this component by showing that the defendant knew that the plaintiff "faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Martinez*, 563 F.3d at 1089. But an inadvertent failure to provide adequate medical care—even if it rises to the level of medical malpractice—does not in itself amount to a constitutional violation. *See Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976). Nor does mere disagreement with the type of

6

medical care provided establish an Eighth Amendment violation. *See Callahan v. Poppell*, 471 F.3d 1155, 1160 (10th Cir. 2006) (prisoners do not have Eighth Amendment right to a particular course of treatment). To survive summary judgment, Mr. Hill needed to provide evidence supporting an inference that the defendants knew about and disregarded a substantial risk of harm to his health or safety. *See Mata*, 427 F.3d at 752.

## 1. Nurse Thompson

Mr. Hill has adduced no evidence that Nurse Thompson knew about and failed to reasonably respond to a substantial risk posed by his wrist injury. She ordered an x ray, consulted the radiologist, and referred Mr. Hill to two specialists. She and other healthcare providers at the facility also treated his symptoms by bandaging, applying ice, providing splints, and prescribing a muscle rub and pain medicine. There is no evidence that she was aware that the treatment provided and the referrals made were inadequate to assess and treat the injury. The radiologist read the initial x ray as normal, and Mr. Hill has not shown that Nurse Thompson's reliance on that medical opinion was improper. Indeed, he concedes that "the nature of the problem with [his] wrist was unexpectedly discovered by [the orthopedic surgeon]," Opening Br. at 17, and he does not dispute that he did not mention his wrist when he met with Nurse Thompson in connection with his hip two weeks after learning the results of the initial x ray. As for the MRI, regardless of when she first learned of the results, she could reasonably assume that the orthopedic surgeon would follow up on Mr.

7

Hill's care, as he stated in his report he would do. And when the orthopedic surgeon recommended that Mr. Hill see a hand surgeon, Nurse Thompson made the referral.

Even assuming that Mr. Hill established that the treatment provided by Nurse Thompson was not free of error, "[a] negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation," *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999). The treatment Mr. Hill received does not amount to an "unnecessary *and wanton* infliction of *pain*" proscribed by the Eighth Amendment, *Sealock*, 218 F.3d at 1210 (internal quotation marks omitted). Because Mr. Hill has not shown that Nurse Thompson acted with the requisite state of mind, the district court did not err by granting summary judgment on the claims against her.

## 2. Dr. Cabiling

Mr. Hill concedes in his amended complaint that "[t]here is nothing in the medical record which indicates that Dr. Cabiling evaluated [him] or was consulted regarding his wrist." Aplt. App. at 14. "[A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind." *Estelle*, 429 U.S. at 105-06 (internal quotation marks omitted). Although Mr. Hill attempts to hold Dr. Cabiling liable as "captain of the ship," Opening Br. at 16, "[s]ection 1983 does not authorize liability under a theory of respondeat superior." *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011). "[A] plaintiff must establish supervisory liability . . . by demonstrating an intentional, conscious, and deliberate act by the defendant

8

participating in, or knowingly acquiescing in, the unconstitutional behavior." *Dodds v. Richardson*, 614 F.3d 1185, 1196 n.4 (10th Cir. 2010) (internal quotation marks omitted). The concededly limited involvement of Dr. Cabiling in Mr. Hill's medical care cannot meet this standard. Therefore, summary judgment was properly granted on the claims against Dr. Cabiling as well.

**B. Discovery Stay**

With their reply brief in support of their motion for summary judgment, the defendants submitted a new declaration from Nurse Thompson about when she first reviewed Mr. Hill's file and ordered the initial x ray. In response, Mr. Hill filed a motion to reopen discovery and for leave to respond to the defendants' reply. The court denied Mr. Hill's motion as moot, stating "that the analysis and outcome herein is not materially altered regardless of Nurse Thompson's original or modified testimony." Aplt. App. at 238 n.1.

We review for abuse of discretion the district court's discovery rulings, *see Soc'y of Lloyd's v. Reinhart*, 402 F.3d 982, 1001 (10th Cir. 2005), and its decisions on whether to allow a nonmoving party to respond to a moving party's reply brief at the summary-judgment stage, *see Pippin v. Burlington Res. Oil & Gas Co.*, 440 F.3d 1186, 1191-92 (10th Cir. 2006). Mr. Hill makes no argument as to how the treatment he received would have differed based on when Nurse Thompson first reviewed his file and ordered an x ray of his wrist; after all, the x ray showed nothing wrong. The district court properly decided not to allow additional discovery or briefing.

## III. Conclusion

The judgment is affirmed.

Entered for the Court


Harris L Hartz
Circuit Judge