**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

JAMES R. DAWSON, JR.,

    Plaintiff - Appellant,

v.

JEFF ARCHAMBEAU, the CEO of
Colorado Health Partners; RICK
RAEMISCH, Executive Director of the
Colorado Department of Corrections;
SUSAN TIONA, Chief Medical Officer of
the Colorado Department of Corrections;
C. IRELAND, FCF Health Providers; D.
HIBBS; T. SICOTTE; R. FRICKEY,

    Defendants - Appellees.

No. 18-1143
(D.C. No. 1:16-CV-00489-MSK-NYW)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **McKAY**, and **MORITZ**, Circuit Judges.
_____

    James R. Dawson, Jr., is an inmate in the custody of the Colorado Department

of Corrections (CDOC). He appeals pro se the district court's grant of summary

judgment in favor of defendants. Mr. Dawson's complaint sought relief under

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

42 U.S.C § 1983 for defendants' alleged constitutional violations related to their failure to provide treatment for his Hepatitis C and certain acute symptoms.

Exercising jurisdiction under 28 U.S.C. § 1291, we affirm in part and reverse in part, and remand for further proceedings consistent with this order and judgment. We reverse the district court's judgment in favor of Cynthia Ireland, Trudy Sicotte, Robert Frickey, and Dee Ann Hibbs (collectively, the medical provider defendants) on Mr. Dawson's Eighth Amendment claims to the extent they are based on these defendants' failure to treat the severe acute symptoms that Mr. Dawson reported to them. We also direct the court on remand to consider, in the first instance, Mr. Dawson's claims that Rick Raemisch, Susan Tiona, and Jeff Archambeau were deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment. We otherwise affirm the district court's judgment. We grant Mr. Dawson's application to proceed on appeal without prepayment of filing and docketing fees.[1]

## I.    Background

Mr. Dawson has Hepatitis C. He was diagnosed with that disease by CDOC health care providers 25 years ago, but he did not seek treatment until 2013. Mr. Dawson claims that he is suffering from known symptoms of end-stage liver

---

[1] Mr. Dawson has accumulated at least three strikes under 28 U.S.C. § 1915(g), and he is therefore barred from proceeding in this court without prepayment of filing and docketing fees. But in response to an order to show cause, he came forward with a detailed description of his current medical condition and allegations of severe pain and suffering. Based on that response, we grant him leave to proceed in forma pauperis under the "imminent danger" exception in § 1915(g).

disease, specifically, "upper right-side disabling abdominal pain, swelling in his stomach, light clay colored stool, dark colored urine, bitter taste in his mouth, itching, and extreme fatigue." R., Vol. I at 193. In 2015, Mr. Dawson became aware of new drugs being used to treat and cure people with Hepatitis C, including inmates at CDOC. These new drugs are reportedly highly effective but also very costly.

The treatment of inmates with Hepatitis C is governed by CDOC's written Clinical Standards (hereafter, the Protocol), which set forth certain criteria and other requirements for treatment eligibility. One such requirement is verified completion of a drug and alcohol treatment program.[2] In addition, an inmate must undergo a laboratory test to detect the prisoner's degree of liver fibrosis, if any. The result of that test is reported as an APRI score.[3] Under the Protocol, inmates with APRI scores below 0.4 receive only yearly screenings for liver fibrosis. Those with APRI scores between 0.4 and 0.7 receive yearly screenings and referrals to drug and alcohol treatment. Inmates with APRI scores higher than 0.7 are considered for Hepatitis C treatment after completing a drug and alcohol treatment program. Treatment consists of further screenings for liver fibrosis, liver cancer, and other conditions, and medication for Hepatitis C including, potentially, one of the new highly effective medications. Medical providers at CDOC record relevant

---

[2] Mr. Dawson contends that this requirement "became waivable [in] April 2013," R., Vol. I at 191, but this factual dispute does not affect our analysis.

[3] APRI stands for "AST to Platelet Ratio Index." R., Vol. III at 75. AST is a laboratory value used to evaluate liver function. *Id.* at 69.

information about an inmate seeking treatment in a Hepatitis C Evaluation Worksheet. And inmates receiving Hepatitis C treatment must execute a treatment contract.

Mr. Dawson requested Hepatitis C treatment in an appointment with Dr. Ireland in November 2013. He informed Dr. Ireland that he "was experiencing dark tea colored urine, itching, fatigue, swelling in [his] stomach, light colored stool, and [a] bitter taste in [his] mouth occasionally," as well as "disabling abdominal pain." R., Vol. I at 195. Dr. Ireland did not provide Mr. Dawson any treatment for these reported symptoms. She did schedule an appointment for Mr. Dawson in late January 2014 to assess his condition and his eligibility for Hepatitis C treatment.

In early January 2014, after unspecified treatment at an endoscopy facility, Mr. Dawson had a follow-up appointment with Ms. Sicotte, a nurse practitioner. He informed Ms. Sicotte that he had not received any treatment for his Hepatitis C since his appointment with Dr. Ireland the previous November. Ms. Sicotte told Mr. Dawson that he was scheduled to meet with someone from Mental Health to determine his eligibility for treatment. Mr. Dawson also informed Ms. Sicotte of his Hepatitis C symptoms, specifically that he "was experiencing disabling abdominal pain." *Id.* Ms. Sicotte did not provide Mr. Dawson any treatment for his reported symptoms.

On January 29, 2014, Mr. Dawson saw Mr. Frickey, a nurse practitioner, to discuss treatment options for his Hepatitis C. He informed Mr. Frickey of his previous appointments with Dr. Ireland and Ms. Sicotte and indicated that his

4

condition was not improving. According to Mr. Dawson, Mr. Frickey responded that either he, Dr. Ireland, or Ms. Sicotte would be providing Mr. Dawson with treatment for his Hepatitis C. Mr. Frickey disputes this and contends that Mr. Dawson decided against pursuing Hepatitis C treatment. Although Mr. Dawson also informed Mr. Frickey that he "was experiencing disabling abdominal pain," *id.*, Mr. Frickey did not provide him any treatment for that reported symptom.

In August 2015, Mr. Dawson saw Ms. Hibbs, a nurse practitioner, to discuss treatment options for Hepatitis C. She advised Mr. Dawson regarding the documentation necessary to satisfy the drug and alcohol treatment requirement under the Protocol and gave him a Hepatitis C treatment contract to sign. She also ordered blood work and started filling out a Hepatitis C Evaluation Worksheet for Mr. Dawson. He informed Ms. Hibbs that he "was experiencing disabling abdominal pain," *id.*, but she did not provide him any treatment for that reported symptom.

In Claim One of his complaint, Mr. Dawson alleged that Mr. Raemisch, Dr. Tiona, and Mr. Archambeau violated his right to equal protection under the Fourteenth Amendment by creating, implementing, and applying a discriminatory policy to delay and deny him a cure for Hepatitis C, while providing a cure to other similarly situated inmates. In his description of these claims in his complaint, Mr. Dawson incorporated language from another section asserting Eighth Amendment deliberate-indifference claims against these defendants. The district court also construed certain of Mr. Dawson's filings opposing summary judgment as attempting to assert substantive-due-process claims against these defendants.

5

In Claim Two, Mr. Dawson alleged that the medical provider defendants were deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment, in failing to monitor his Hepatitis C and in failing to provide any treatment for the symptoms of that disease. The district court granted summary judgment in favor of the defendants on all claims.[4]

## II.  Discussion

We review a district court's grant of summary judgment de novo. *Callahan v. Poppell*, 471 F.3d 1155, 1158 (10th Cir. 2006). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[W]e look at the factual record and the reasonable inferences to be drawn from the record in the light most favorable to the non-moving party." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006). But to avoid summary judgment, a plaintiff must come forward with evidence and cannot rely on "mere speculation, conjecture, or surmise." *Id.* (internal quotation marks omitted). "Although a nonmoving party may not rely merely on the unsupported or conclusory allegations contained in his pleadings, a verified complaint may be treated as an affidavit for purposes of summary judgment

---

[4] Mr. Dawson also asserted a Claim Three, in which he alleged that the medical provider defendants violated his due process rights under the Fourteenth Amendment by failing to follow the Protocol for treatment of his Hepatitis C. We do not address the district court's judgment in favor of the medical provider defendants on these claims because Mr. Dawson does not raise on appeal any claim of error in the district court's holding.

6

if it satisfies the standards for affidavits set out in Rule 56[].” *Conaway v. Smith*, 853 F.2d 789, 792 (10th Cir. 1988).

## A. Deliberate-Indifference Claims Against the Medical Provider Defendants

To succeed on an Eighth Amendment claim, a prisoner must demonstrate "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Self*, 439 F.3d at 1230 (internal quotation marks omitted). The court's inquiry is comprised of objective and subjective components. *Id.* "Under the objective inquiry, the alleged deprivation must be sufficiently serious to constitute a deprivation of constitutional dimension." *Id.* (internal quotation marks omitted). "[U]nder the subjective inquiry, the prison official must have a sufficiently culpable state of mind." *Id.* at 1230-31 (internal quotation marks omitted). This is "akin to recklessness": "consciously disregard[ing] a substantial risk of serious harm." *Id.* at 1231 (internal quotation marks omitted). Importantly, negligent diagnosis or treatment is not enough to demonstrate a constitutional violation. *Id.* at 1230. Thus, "the subjective component is not satisfied, absent an extraordinary degree of neglect, where a doctor merely exercises his considered medical judgment." *Id.* at 1232. And "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer v. Brennan*, 511 U.S. 825, 838 (1994).

### 1.   Failure to Provide Hepatitis C Treatment Under the Protocol

The district court construed Mr. Dawson's Eighth Amendment claims against the medical provider defendants as raising both his need for ongoing Hepatitis C treatment and for treatment of his acute present symptoms. As to his request for Hepatitis C treatment under the Protocol, the court held that his claims against Dr. Ireland, Ms. Sicotte, and Ms. Hibbs amounted to a disagreement with these providers' medical judgments regarding appropriate treatment. *See Gee v. Pacheco*, 627 F.3d 1178, 1192 (10th Cir. 2010) ("Disagreement with a doctor's particular method of treatment, without more, does not rise to the level of an Eighth Amendment violation.").

We agree. Dr. Ireland did not ignore Mr. Dawson's request for Hepatitis C treatment in November 2013; she scheduled him for an appointment in two months to assess his condition and his eligibility for treatment. Having seen that Mr. Dawson had an upcoming appointment, it was within Ms. Sicotte's medical judgment that Mr. Dawson's request for Hepatitis C treatment could proceed at that time. And Ms. Hibbs began the screening process for assessing Mr. Dawson's eligibility for that treatment under the Protocol. Mr. Dawson does not show that any these defendants were deliberately indifferent to his request for Hepatitis C treatment under the Protocol.

Due to the disputed issue whether Mr. Dawson asked to proceed with Hepatitis C treatment in his appointment with Mr. Frickey in January 2014, the district court applied a different analysis. Adopting Mr. Dawson's version of the

facts—that Mr. Dawson did not change his mind about seeking treatment—the district court held that Mr. Frickey provided treatment to Mr. Dawson in the form of further testing and evaluation. We agree with Mr. Dawson that the record does not support this conclusion. However, the district court also held that Mr. Dawson failed to show that any delay resulting from Mr. Frickey's failure to provide Hepatitis C treatment in January 2014 caused him harm because laboratory testing in June 2015 ultimately showed that Mr. Dawson was not eligible for treatment under the Protocol other than yearly screenings for liver fibrosis. *See* R., Vol. III at 69-70 (Affidavit of Dr. Tiona explaining that Mr. Dawson's APRI score in June 2015 was 0.329, which did not qualify him for Hepatitis C medication under the Protocol). Mr. Dawson does not show error in this aspect of the district court's holding as to his claim against Mr. Frickey.

We affirm the district court's judgment in favor of the medical provider defendants on Mr. Dawson's claims regarding his request for Hepatitis C treatment under the Protocol.

### 2. Failure to Provide Treatment for Acute Symptoms

The district court also granted all of the medical provider defendants summary judgment on Mr. Dawson's claims that they failed to treat the acute symptoms that he reported to them. The district court held that the only evidence Mr. Dawson presented regarding the symptoms he reported was a number of statements in his summary judgment briefs. The court treated these factual assertions as if they were

9

properly asserted in an affidavit, but found them too vague or ambiguous to carry Mr. Dawson's burden to show disputed material facts.

This was error. The district court failed to consider the allegations in Mr. Dawson's verified complaint. *See* R., Vol. I at 202; *Conaway*, 853 F.2d at 792. Mr. Dawson's complaint was in the summary judgment record. *See* R., Vol. II at 9, 11. And the allegations in his complaint are not ambiguous. He alleged that he informed Dr. Ireland that he "was experiencing dark tea colored urine, itching, fatigue, swelling in [his] stomach, light colored stool, and [a] bitter taste in [his] mouth occasionally," and that he informed all four of the medical provider defendants that he "was experiencing disabling abdominal pain." *Id.*, Vol. I at 195. There is no dispute that these defendants did not provide Mr. Dawson with any treatment for the symptoms that he reported.

Ms. Hibbs argues that Mr. Dawson's abdominal pain was not an objectively serious medical need. But her contention addresses only the district court's holding that Mr. Dawson's vague and non-specific description—in his brief—of the pain that he reported to Ms. Hibbs was insufficient to establish that he informed her of "the sort of severe or intense pain necessary to constitute a serious medical need for purposes of the Eighth Amendment deliberate indifference analysis." *Id.*, Vol. IV at 68. Ms. Hibbs does not address the allegation in Mr. Dawson's verified complaint that he told her he was experiencing disabling abdominal pain.

"A medical need is serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily

recognize the necessity for a doctor's attention." *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996) (internal quotation marks omitted). This can include "the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Id.* (internal quotation marks omitted). Even a lay person would recognize the need for treatment of pain described as "disabling."

We reverse the district court's grant of summary judgment to Dr. Ireland, Ms. Sicotte, Mr. Frickey, and Ms. Hibbs on Mr. Dawson's claims that they were deliberately indifferent to his serious medical needs in failing to provide any treatment for the acute symptoms that he reported to these defendants. We remand these claims for further consideration in the district court.

### B.     Claims Against Mr. Raemisch, Dr. Tiona, and Mr. Archambeau

Mr. Dawson's complaint alleged that Mr. Raemisch, Dr. Tiona, and Mr. Archambeau violated his right to equal protection under the Fourteenth Amendment by creating, implementing, and applying a discriminatory policy—the Protocol—to delay and deny him a cure for Hepatitis C, while providing a cure to other similarly situated inmates. The district court granted summary judgment in favor of defendants on these claims because Mr. Dawson failed to come forward with evidence that he was similarly situated to other inmates who were treated differently. *See Templeman v. Gunter*, 16 F.3d 367, 371 (10th Cir. 1994) (requiring that other inmates be "similar in every relevant respect"). He does not challenge that holding

11

on appeal.  We affirm the district court's judgment on Mr. Dawson's equal protection claims.

Mr. Dawson instead argues that the district court "recharacterized" his claims against Mr. Raemisch, Dr. Tiona, and Mr. Archambeau.  The gist of his contention is that the district court failed to recognize and rule on his separate claims that these defendants were deliberately indifferent to his serious medical needs.

The district court did hold that it was unclear whether Mr. Dawson was asserting substantive-due-process claims against these defendants, in addition to his equal protection claims.  The court construed his summary judgment brief and another filing as asserting substantive-due-process claims.  But we find no support for this conclusion in either filing cited by the district court.  Rather, in opposing summary judgment, Mr. Dawson clearly argued that Mr. Raemisch, Dr. Tiona, and Mr. Archambeau were deliberately indifferent to his serious medical needs.  *See* R., Vol. II at 68-72; *id.* at 190 (Mr. Dawson's surreply to Mr. Archambeau's summary judgment motion, stating that his claims against Mr. Archambeau were twofold: equal protection and deliberate indifference to his serious medical needs); *see also* Suppl. R. at 4-6 (Mr. Dawson's motion asking the district court to take judicial notice of a page in his complaint asserting an Eighth Amendment claim against Mr. Archambeau (contained in a section of the complaint that Mr. Dawson incorporated by reference in Claim One, *see* R., Vol. I at 194).  Indeed, the district court observed that Mr. Dawson's argument "seem[ed] to be more appropriate for

12

consideration under the deliberate indifference standard of the Eighth Amendment, as opposed to a substantive due process violation." *Id.*, Vol. III at 75.

The district court did not address in its summary judgment order (1) whether Mr. Dawson pleaded deliberate-indifference claims against these defendants, (2) if so, the nature of those claims, and (3) whether he came forward with evidence to support them. On remand, we direct the court to address these issues in the first instance. *See Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1227 (10th Cir. 2013) ("Where an issue has not been ruled on by the court below, we generally favor remand for the district court to examine the issue.")

## III.    Conclusion

We reverse the district court's grant of summary judgment in favor of Dr. Ireland, Ms. Sicotte, Mr. Frickey, and Ms. Hibbs on Mr. Dawson's claims that they were deliberately indifferent to his serious medical needs in failing to provide treatment for the acute serious symptoms that he reported to them. We also direct the court, on remand, to consider Mr. Dawson's deliberate-indifference claims against Mr. Raemisch, Dr. Tiona, and Mr. Archambeau, to the extent that he pleaded such claims. We otherwise affirm the district court's judgment.

Mr. Dawson's request to proceed on appeal without prepayment of costs or fees is granted. The relevant statute, 28 U.S.C. § 1915(a)(1), does not permit litigants to avoid payment of filing and docketing fees, only *prepayment* of those fees. Since we have reached the merits of this matter, prepayment of fees is no longer an issue. Though we have disposed of this matter on the merits, Mr. Dawson

remains obligated to pay all filing and docketing fees by continuing to make partial payments until the entire appellate filing fee is paid.

Entered for the Court


Monroe G. McKay
Circuit Judge